Sewall, J.
The demandant’s title is as tenant for life in the demanded premises, which were assigned to her as and for her dower of and in the lands and tenements of a former husband, Eli Bush, deceased. The tenant defends under the same title, and claims to hold the premises by the extent of an execution, upon a judgment recovered by him against Matthew Barber, the second husband of the demandant, with whom she intermarried after the assignment to her of her dower, and while she continued in the seisin and occupation of the demanded premises, as of her freehold and estate. The extent, produced by the tenant, is an appraisement of the rents and profits of the demanded premises for the term of three years; which are set off to the tenant to hold to him accordingly, in satisfaction of his execution against Matthew Barber.
Some doubts have arisen as to the regularity of the proceedings and return, — whether these are according to the provisions of the statute directing the issuing, extending, and [ * 263 ] * serving of executions. (1) For myself, I am satisfied upon this point.. The interest of the husband in the real estate of his wife, that is, in any lands or tenements wherein she has an estate of freehold, whether of inheritance or for life, is a title to the rents and profits during the coverture. The estate itself remains entire to the wife, or to her heirs, upon the dissolution of the marriage. (2) The case of a tenant by the courtesy may be said to be a continuance of the relation in that appropriate manner. The rents and profits were all, therefore, that was assignable in a due course of law. But we have not found it necessary to determine, conclusively, upon the regularity of the extent and return shown in this case. A different practice has been, we believe, adopted in some instances; and lands holden as dower have been taken and *265 appraised, according to the value of the whole interest and estate, estimating the chances of the life of the tenant in dower, (a)
An extent, for a determined number of years, of the rents and profits, is a charge or encumbrance ; but the legal seisin of the freehold remains undisturbed. The present action is, therefore, right in point of form. If the charge upon the estate had been defeated, or was at an end, when this action was brought, it was compétent for the demandant to aver her own seisin of the demanded premises; and, without proving an entry upon the tenant, subsequent to the determination of his estate, she is entitled to recover against him, as upon a disseisin done to herself.
The demandant contends that the term by which the demanded premises were encumbered for the benefit of the tenant, and to satisfy his execution against Matthew Barber, although not elapsed in point of time when this action was commenced, had been determined and defeated by a dissolution of the marriage, and a divorce from the bonds of matrimony, which had existed between her and the said Matthew. And there can be no doubt that a divorce from the bonds of matrimony has, in this respect, the same operation and effect which a dissolution of the marriage by the death of one of the parties would have. (3)
* The marriage of the demandant with Matthew Barber [ * 264 ] was contracted within this state, while the parties resided here. They have since resided together in the state of Vermont; and there, while the parties had, both of them, their domicile in that state, the divorce relied on for the demandant was decreed by the Supreme Court of that state. The proceedings, at the instigation of the demandant, and the decree thereon, are duly certified in that authentic form which entitles them to full faith and credit in the courts of this state.
But against a conclusion for the demandant upon this evidence, several suggestions .have been made and argued by the counsel for the tenant, which were thought, at the time, to deserve some consideration.
Decrees of divorce obtained in the state of Vermont have been thought liable to be impeached, particularly because of the very extraordinary jurisdiction in suits for divorce there assumed and exercised. The case of Jackson vs. Jackson, (4) cited in the argu ment for the tenant, is a striking instance of the extent to which *266 this assumed power has been carried, and serves to show the mischievous consequences to be apprehended from it.
In that case, however, the Supreme Court of the state of New York did not undertake to pronounce upon the validity of the proceedings and decree in the state of Vermont, whether a divorce was thereby effected between the parties, or not. They refused their aid, in an action brought by the wife, who had obtained the decree of divorce against the husband, to charge him with a sum of money allowed her as alimony. The action was not sustained, and upon reasons which have great strength in their application to the rights of the parties in that action.
The proceedings and decree, relied upon for the demandant in the case at bar, are liable to none of the objections which prevailed in the case cited. The jurisdiction of the parties between whom the divorce was decreed must be considered as well established by their residence together in the state of Vermont, as husband [ * 265 ] and wife, in a manner * that proves a permanent domicile there before the suit for a divorce was commenced, and which continued when the decree was obtained. The tribunal for divorces in the state of Vermont had, therefore, an exclusive jurisdiction, not only of the parties, but of the subject matter of the suit, according to the regulations, respecting causes of divorce and alimony, which have been adopted in this state, (5) and which are generally received.
, Regulations on the subject of marriage and divorce are rather parts of the criminal, than of the civil, code; and apply not so much to the contract between the individuals, as to the personal relation resulting from it, and to the relative duties of the parties to their standing and conduct in the society of which they are members; and these are regulated with a principal view to the public order and economy, the promotion of good morals, and the happiness of the community. A divorce, for example, in a case of public scandal and reproach, is not a vindication of the contract of marriage, or a remedy to enforce it; but a species of punishment, which the public have placed in the hands of the injured party to inflict., under the sanction, and with the aid, of the competent tribunal, operating as a redress of the injury, when, the contract having been violated, the relation of the parties, and their continuance in the marriage state, has become intolerable or vexatious to them, and of evil example to others. The lex loci, therefore, by which the conduct of married persons is to be regulated, and their relative duties are to be determined, and by which the relation itself is to be, in certain cases *267 annulled, must be always referred, not to the place where the contract was entered into, but where it subsists for the time, where the parties have had their domicile, and have been protected in the rights resulting from the marriage contract, and especially where the parties are, or have been, amenable for any violation of the duties incumbent upon them in that relation. (b)
The laws of Vermont, which authorize the Supreme Court of that state to proceed in suits for divorce instituted in favor of persons resident for a time, but having no settled * dom- [ * 266 J icile within the state, against persons resident and domiciled in other states, who are not, and never have been, amenable to the sovereignty of the state of Vermont, upon allegations of offences not pretended to have been committed within the territory of the state, or contrary to the peace, morals, or economy of the society there, or in violation of any contract subsisting, or which has ever been recognized there, — in short, where no jurisdiction of the parties, or of the subject matter, can be suggested or supposed, — are not to be justified by any principles of comity which have been known to prevail in the intercourse of civilized states. I must be permitted to say, the operation of this assumed and extraordinary jurisdiction is an annoyance to the neighboring states, injurious to the morals and habits of their people; and the exercise of it is, for these reasons, to be reprobated in the strongest terms, and to be counteracted by legislative provisions in the offended states.
But the proceedings in the suit, and the decree of divorce offered in evidence in the case at bar, are not within the reach of this cen sure, or liable to be impeached upon either of the objections which have been considered by this Court. We receive- the evidence, therefore, as conclusive, and as proving undeniably the material fact in issue between the parties, viz., that the marriage which had been between Matthew Barber and the demandant was dissolved in due course of law, and with the sanction of a competent tribunal.
The result, this fact being ascertained, is to be determined by the laws of this territory exclusively where the real estate is situate ol which the title is brought in question by this action. The title of the tenant, under his execution against Matthew Barber, ceased, and was defeated, by the event of the dissolution of the marriage, upon which his interest in the real estate of the demandant depended: the title of the demandant remained, thereupon, entire to her, discharged of the encumbrance ; and this action is maintained foi *268 the demandant, who must have judgment to recover the demanded premises with costs.
ADDITIONAL NOTE.
[See Dejarnet vs. Dejarnet, 5 Dana, 499. — Bradshaw vs. Heath, 13 Wend. 407. — Starr vs. Pease, 8 Conn. 541. — Wheeler vs. Hotchkiss, 10 Conn. 225. — Babcock vs Smith, 22 Pick. 61.—F. H.]

 Stat. 1783, c. 57.

 2 Black. Comm. 433. — Co. Lit. 351.

 [Roberts vs. Whiting, 16 Mas.. Rep. 186.— Chapman vs. Gray, 15 Mass Rep 439. — Ed.]

 3 Black. Comm. 183. — Fitz. N. B. 446, 470.— Co. Lit. 351.

 1 Johns. Rep. 424.

 Stat. 1785, c. 69.

 [Inhab. Hanover vs. Turner, 14 Mass. Rep. 227. — Jackson vs. Jackson, 1 Johns 424. —I'awling vs. Wilson, 13 Johns. 192.— Borden vs. Fitch, 15 Johns. 121. — Ed.