Parker C. J.
The positions contended for by the counsel for the tenant, in relation to the estate and interest of the husband in the lands of the wife during coverture, are well founded in common law principles ; and it is also true, that a divorce a mensa et thoro only does not dissolve the marriage, for the parties thus separated cannot marry any other person in consequence of such divorce ; and they can live together again as man and wife without any new ceremony of marriage. The effect of such divorce is to release the aggrieved party from the control of the other, as to the person or property, while they continue in a state of separation, under such terms and conditions as shall be imposed by the Court which shall decree the divorce, pursuant to legislative provision on the subject.
The question therefore in this case turns altogether upon the construction of the statutes of 1785, c. 69, and 1820, c. 56.
Whatever provisions in relation to the property of persons thus divorced have been established by the legislature, must oe enforced, it being undeniable that the authority of that body is competent to repeal or alter the common law in this oarticular.
The 5th section of St. 1785, c. 69, enacts, that “ wherev *338 er a decree of divorce from bed and board shall be made, because of the cruelty of the husband, the wife, if there be no issue living at the time of the divorce, shall be restored to all her lands, tenements and hereditaments, and be allowed,” &c. Does this mean such lands, &c., as were hers before marriage or came to her during coverture, of which she has done nothing to divest her title, or such only as remain undisposed of or unalienated by her husband ? We think it very clear that the former construction is within the true invent of the legislature. The lands are in a legal sense hers, notwithstanding the temporary use of the rents and profits by the husband, and which he may undoubtedly convey the enjoyment of to the same extent as he had it himself; that ’s, until by a decree of the Court they are restored to the wife, in consequence of the cruelty of the husband. The same provision is enacted in the same terms, in the former part of the same section, as applicable to divorces a vinculo for the causes therein expressed.[1] Now although in one case the marriage is dissolved, and in the other, in a certain sense, it continues, it ought to be supposed, that if any difference was intended to be made in the disposition of the real estate of the wife in the two cases, the legislature would have expressed the limitation or qualification which they intended to establish. A restoration of all her lands, tenements and hereditaments can mean nothing less than replacing the wife in the enjoyment and control of her real estate in the same manner she would have had it if not married, unless by some lawful act of her own she had parted with her estate.
It is said that by this construction a door will be open to frauds, as the husband may convey, be divorced, and after the land is restored to his wife the parties may re-unite and enjoy .the profits. But the husband will forever be estopped by his deed from reclaiming the land himself; and the purchaser may always protect himself by covenants against any loss by restoration to the wife. On the other band, if the contrary construction should prevail, it would always be in the *339 pcwer of a cruel husband to deprive his wife of that protection which it is the intention of the law to afford her. We have no doubt that the statute as we. thus construe it is a wise one, and no mischief can happen to any one who is sufficiently vigilant in his contracts.[1]

Tenant defaulted.

 Barber v. Root, 10 Mass. R. 260. See Daxol v. Howland, 4 Mass R 219 ; Harding v. Alden, 9 Greenl. 152.

 As to restoration of wife’s personal estate, see St. 1828, c. 55.