SARAH B. HUNT, Appellant, *v.* WILLIAM B. HUNT, Respondent.

The jurisdiction of a court of another State in which a judgment has been rendered is always open to inquiry in the courts of this State, and the judgment may be also questioned collaterally for fraud.

To authorize a disregard of the judgment because of fraud, there must be fraudulent allegations and representations, designed and intended to mislead, with knowledge of falsity, and resulting in damaging deception.

That a party not competent as a witness under the laws of the State was permitted to testify in his own behalf is not a fraud, nor does it affect the jurisdiction, and so does not afford reason for questioning the judgment collaterally.

Every State has the right to determine for itself upon what grounds the relation of marriage between persons domiciled within its territory may be dissolved, and it may prescribe what legal proceedings may be had to that end.

Jurisdiction of the subject-matter of an action is a power to adjudge concerning the general question involved therein, and is not dependent upon the state of facts which may appear in a particular case, or the ultimate existence of a good cause of action in the plaintiff therein.

A judgment rendered by a court having power lawfully conferred to deal with the general subject involved in the action, and having jurisdiction

of the parties, although against the facts or without facts to sustain it, is not void as rendered without jurisdiction, and cannot be questioned collaterally.

And so where an action for divorce is brought in a court having power to entertain such an action, and which has jurisdiction of the parties, the court has power to give judgment, although plaintiff fails to make out a cause for divorce as prescribed by the laws of the State; and this failure cannot be shown collaterally to avoid the judgment while it stands unreversed, whether the judgment is availed of in the State where granted or in a sister State.

The courts of this State will not assume to pass primarily upon the constitutionality of a statute of another State, or upon the validity of a judgment of divorce granted under it.

*Simonds* v. *Simonds* (103 Mass., 572) distinguished.

Of their own jurisdiction, so far as it depends upon municipal laws, the courts of every country are exclusive judges.

The decisions also of the tribunals of another State as to the true construction of its laws, are binding upon the courts of this State.

Jurisdiction of the person of a defendant in an action for divorce may be acquired by a court of the State in which he or she is a domiciled citizen, by such proceedings in the nature of service of process of the court as the law of the State has made equivalent to personal service within its jurisdiction; so long as the citizen retains that relation to the State, he owes it allegiance and is subject to its laws, and this subjection he cannot throw off by a temporary or prolonged absence from the State.

A judgment of divorce, therefore, rendered by the court of another State, against a domiciled citizen thereof, upon a substituted service of process such as the law of the State has authorized in the case of an absent defendant, is valid *in personam* so as to affect a dissolution of the marriage contract; and is conclusive upon the defendant in the courts of this State, although he was not within the territorial jurisdiction during the progress of the suit and did not appear therein.

*Borden* v. *Fitch* (15 J. R., 121); *Kerr* v. *Kerr* (41 N. Y., 272); *Hoffman* v. *Hoffman* (46 N. Y., 30) and similar cases distinguished.

The domicile of a husband is *prima facie* that of a wife; she may acquire a separate domicile whenever it is necessary for her to do so, as where the parties are living apart under a judicial decree of separation, or when the conduct of the husband has been such as to entitle her to a divorce, absolute or limited; but this right springs from and is limited by the necessity of its exercise.

In an action for divorce *a vinculo*, defendant set up as a defense a judgment of divorce in an action by him against plaintiff in a court of Louisiana; she was not personally served with process, and did not appear therein. It appeared, however, that she and her counsel had full notice of the commencement of the proceedings, of their nature, what judgment was sought, and upon what allegations the right to judgment was based. *Held*, that the omission in the petition upon which the proceedings in Louisiana was founded of facts not material to

the alleged cause of action, was not a fraud upon the court or the plaintiff (defendant therein), which would impeach the judgment; nor was the fact that it was not alleged in the petition that plaintiff was then abiding in another State, it being shown that this was not unusual in the practice in Louisiana; nor did the fact, that previous to the bringing of his action, defendant wrote plaintiff a letter indicating that he desired and proposed only a separation from bed and board establish fraud, as it appeared that plaintiff was not misled thereby.

It appeared that a *curator ad hoc* was appointed for plaintiff in the Louisiana action. This, the evidence showed, was by the laws of that State a valid substitute, in an action for divorce, for a personal service of process, in the case of a domiciled defendant absent from the State. The court had jurisdiction of the subject of divorce. Plaintiff was abiding in Louisiana at the time of her marriage with defendant; he was then, and at the time of his bringing and during the pendency of said action, a domiciled citizen of the State. After the marriage plaintiff lived in his household as his wife, having no separate domestic *status* or interest. It did not appear that when she left that State she had any cause for a divorce, or that she intended to change her domicile, or to take proceedings against her husband; there was no judicial decree of separation. *Held*, that a finding of the Special Term that the domicile of both parties was in the State of Louisiana until the judgment of divorce was there rendered, was sustained by the evidence ; and that, in the absence of evidence of fraud, such judgment was conclusive upon plaintiff here.

Also, *held*, that the omission in the petition in the Louisiana suit of an allegation that the defendant (plaintiff here) was absent from the State, did not affect the judgment, it appearing that the allegation was not required, that she was in fact absent, and that the method prescribed by law for a substituted service in such case was taken.

(Argued December 19, 1877; decided January 29, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendant, entered upon a decision of the court upon trial at Special Term. (Reported below, 9 Hun, 622.)

This was an action for divorce *a vinculo* on the ground of adultery. The defense was a prior divorce obtained by defendant in Louisiana.

The court found the following facts :

" That the plaintiff and defendant intermarried on the 2d day of January, 1866, at the city of New Orleans, they, at the time of such intermarriage, both being residents and citizens of said city and State ; that after such intermarriage

the plaintiff and defendant both continued to reside in said city of New Orleans, and to cohabit as husband and wife at the home and residence of said defendant in said city until about the first day of April, 1869, at which time said plaintiff left the home of her said husband, and left said city and State and has not since returned thereto ; that said defendant continued and has ever since resided in said city of New Orleans at his said home and residence, keeping house therein with the members of his family other than said plaintiff; and that by the laws of said State of Louisiana the domicile of both plaintiff and defendant remained and was in said State until the judgment of divorce hereinafter mentioned.    That afterwards and about the 7th day of April, 1870, the defendant herein commenced an action for divorce against the plaintiff herein, in the Fifth District Court of the parish of Orleans, in the State of Louisiana, said court being a court of general jurisdiction, duly created by the laws of said State, and having jurisdiction of all questions relating to marriage and divorce ; that such proceedings were afterwards had in said action, that on the 16th day of June, 1870, a judgment of divorce was rendered in and by the said court in said action, dissolving the marriage relation theretofore existing between the plaintiff and defendant in said action ; that said judgment remains unreversed and of full force and effect, and that the same is, by virtue of the laws of the said State of Louisiana, valid and effectual between the said several parties thereto. That afterwards and on the first day of May,· 1871, the defendant herein intermarried at said city of New Orleans with another woman, his present wife, which intermarriage was solemnized publicly and in due form, according to the laws of said State of Louisiana ; that such marriage was lawful and valid under the laws of said State ; that since such marriage the said defendant has lived and cohabited with such woman as his wife, and that such cohabitation is the said several acts alleged and set forth as adultery in the complaint in this action.

Further facts appear in the opinion.

*Samuel Hand*, for appellant. The judgment in the former action was assailable collaterally, and would be so even in Louisiana, for want of jurisdiction of the person, want of authority in the court to render the judgment, and the procurement of the judgment by fraud upon the legal rights of defendant. (*Kerr* v. *Kerr*, 41 N. Y., 272, 275; *Noyes* v. *Butler*, 6 Barb., 613, 617; *Bradshaw* v. *Heath*, 13 Wend., 407; *Holmes* v. *Holmes*, 4 Lans., 388, 391, 392; *Phelps* v. *Baker*, 41 How., 237, 241; *Bk. of Chemung* v. *Elmira*, 53 N. Y., 49–53; *Salters.* v. *Tobias*, 3 Paige, 338; 5 id., 299, 354; *Crain* v. *Cavana*, 62 Barb., 100.) Plaintiff was not bound to appear in the Louisiana court on mere casual information that defendant had commenced an action against her there. (*Holmes* v. *Holmes*, 4 Lans., 392; *Kerr* v. *Kerr*, 41 N. Y., 272, 275; *Hoffman* v. *Hoffman*, 46 id., 30, 34; *Moe* v. *Moe*, 2 T. & C., 647; *McGiffert* v. *McGiffert*, 31 Barb., 69; *Vischer* v. *Vischer*, 12 id., 640; *Ewer* v. *Coffin*, 1 Cush., 23; *D'Arcy* v. *Ketchum*, 11 How. [U. S.], 165, 174; *Black* v. *Black*, 4 Bradf., 174; *Miller* v. *Miller*, 1 Bailey, [S. C.], 212., *Maxwell* v. *Stewart*, 22 Wal., 80; *Webster* v. *Reid*, 11 How. [U. S.], 437, 459, 460; *Vischer* v. *Vischer*, 12 Barb., 640.) The Louisiana divorce was inoperative here against plaintiff for want of jurisdiction, she never having been served with process and not having appeared in the action. (*Wallace* v. *Wallace*, 2 S. & T. Mat. Cas., 67, 85, 86; *Shaw* v. *Gould*, 2 L. R. H. of Ld., 55, 81; *Simonds* v. *Simonds*, 103 Mass., 572; *Van Storch* v. *Griffin*, 71 Penn., 240.) The judgment in the suit in Louisiana was void there as wholly unauthorized by, and in conflict with the express statutes and Constitution of that State. (Civil Code of Louisiana, 1870, arts. 139, 143; id., 1838, art., 138.) The act of 1870 did not authorize a divorce for misconduct antecedent to its passage, and if it assumed to do so, it was a retroactive law and void under the Constitution of Louisiana. (Const. Louisiana, art., 110; Rev. Code of Louisiana, arts., 86, 156, 159; *Clark* v. *Clark*, 10 N. H., 380, 391; *Given* v. *Marr*, 27 Me., 212, 222; *Sherburne* v. *Sherburne*, 6 Greenl., 210, 211; *Simonds* v.

*Simonds,* 103 Mass., 572; 37 Barb., 447.) The appointment of the *curator ad hoc* was void, having been made without evidence of the jurisdictional fact that Mrs. Hunt was absent from the State, and without even an averment of that fact in the petition. (Civil Code of Louisiana, arts. 56, 3556, subd. 3; *Lawrence's Case,* 18 Abb., 617; *Noyes* v. *Butler,* 6 Barb., 617; *Dupuy* v. *Hunt,* 2 La. An., 562, 564; *McDonald* v. *Coon,* 13 id., 405; *Seymour* v. *Cooley,* 9 La., 73; *George* v. *Fitzgerald,* 12 id., 605.) The law making the domicile of the husband that of the wife is applicable only to their relations with third parties, and has no application in cases of actual separation and controversy between themselves as to the temporary or permanent severance of the marriage tie by judicial proceedings. (*Vence* v. *Vence,* 15 How. Pr., 497, 499, 500, 576, note; *Schonwald* v. *Schonwald,* 2 Jones Eq. [N. C.], 367, 369; *Irby* v. *Wilson,* 1 D. & B. Eq., 568, 575–582; *Cheever* v. *Wilson,* 9 Wal., 109, 123; *Brimont* v. *Penniman,* 9 Abb. L. J., 132.) New York was plaintiff's domicile of origin, and when she left Louisiana in 1869, under the interdict of her husband never to return, her domicile of origin revived. (Story's Conflict of Laws, § 47; *The Venus,* 8 Cranch, 253; *The Indian Chief,* 3 Rob., 12; *In re Walker,* 1 Lowell's Dec., 237–239; *Udney* v. *Udney,* 1 L. R. Hof. L. Cas., 441; *Reed's Appeal,* 71 Penn., 378, 383; *Harris* v. *Firth,* 4 Cranch C. C., 710; *Burnham* v. *Rangely,* 1 W. & M., 7; *Ex parte Wiggin,* 1 Bk. Reg., 90; La. Code of 1870, arts. 38, 39, 46; La. R. S. of 1870, § 1202.) Plaintiff's husband having consented to her leaving the State is estopped as between them from claiming that she was domiciled with him. (*Tovey* v. *Lindsay,* 1 Dow's H. of L. R., 138–147.) A statutory rule of local law can have no force elsewhere against a wife who has left the State never to return and has become a resident of another State. (4 Lans., 392; 46 N. Y., 43, 44; 1 Abb. U. S. R., 388; 15 U. S. Stat. at Large, 709; *Slaughter House Cases,* 16 Wal., 43, 44, 80.) The judgment in the former action was void having been obtained under circumstances and by means in fraud of the legal rights

of the wife. (*State of Michigan* v. *Phœnix Bk.*, 33 N. Y., 9, 25, 27; *Holmes* v. *Holmes*, 4 Lans., 391; *Vischer* v. *Vischer*, 12 Barb., 690; R. S. of Louisiana, § 3961; Civil Code of Louisiana, art. 2281.)

*G. Tillotson*, for respondent. The Louisiana judgment being valid and effectual under the laws of that State, and remaining of record and unreversed, is conclusive, under the Constitution and laws of the United States, between the parties to this action. (Const. U. S., art. iv, § 1; 1 U. S. Stat. at Large, 122; Story on Const., §§ 1302–1313; *Mills* v. *Duryee*, 7 Cranch, 485; *Cooper* v. *Reynolds*, 10 Wal., 309; *Dobson* v. *Pierce*, 12 N. Y., 156; *Lazier* v. *Westcott*, 26 id., 146; *Embury* v. *Conner*, 3 id., 552; *Kinnier* v. *Kinnier*, 45 id., 535; *Kamp* v. *Kamp*, 59 id., 218; *Voorhees* v. *Bk. of U. S.*, 10 Pet., 474; *Hampton* v. *McConnell*, 3 Wheat., 234; *Bk. of U. S.* v. *Mer. Bk.*, 7 Gill, 415; *Ramson* v. *Wheeler*, 12 Abb. Pr., 139; *Moulin* v. *Ins. Co.*, 4 Zabr., 222.) In order to impeach the judgment obtained against her, plaintiff was bound to show affirmatively that it was obtained by fraud or rendered without jurisdiction. (Louisiana Const. of 1868, art. 83; Louisiana R. S. of 1870, § 1995, p. 396; *Kinnier* v. *Kinnier*, 45 N. Y., 539; Rev. Civil Code of La., tit. 3, art. 56; id., tit. 5, art. 141.) Plaintiff's matrimonial domicile was within the State of Louisiana. (Rev. Civil Code of La., tit. 2, art. 38; 2 Bish. on Div., § 125, p. 102; id., §§ 126–129; *Greene* v. *Greene*, 11 Pick, 410; *Harteau* v. *Harteau*, 14 id., 181; *Barber* v. *Barber*, 21 How. U. S., 582; *Vischer* v. *Vischer*, 12 Barb., 643; *Jackson* v. *Jackson*, 1 J. R., 432; 9 Wal., 123–125; 45 N. Y., 543, 544; *Hood* v. *Hood*, 11 Al., 199; *Dupuy* v. *Wurtz*, 53 N. Y., 556; 2 Bish. on Div. §§ 140, 169; 2 R. S., 148; Code, § 135; 19 Ala., 499; 28 id., 17; 14 Mass., 230; *Ditson* v. *Ditson*, 1 Ames [R. I.], 87; 9 Greenl. R., 140; 8 Wisc., 66, 400, 662; 10 Wal., 317–319; 9 id., 123; Story's Conflict of Laws, 201.) The defendant in the suit in Louisiana was regularly brought into court, according to the laws of that

State; no personal service of the summons upon the defendant was necessary. (*In re Empire City Bk.*, 18 N. Y., 214; *Hollingsworth* v. *Barbour*, 4 Pet., 475; 3 Burge Col. & Foreign Laws, 1056; 2 Bish. on Div. § 165; *Cooper* v. *Reynolds*, 10 Wal., 317, 319; N. Y. Code, § 135; Civil Code La., arts. 57, 141; Rev. Code of Practice, art., 116; *Collins* v. *Ryan*, 32 Barb., 647; *Kinnier* v. *Kinnier*, 45 N. Y., 540–542; *City of Richmond* v. *Smith*, 15 Wal., 438; *Gelpcke* v. *City of Dubuque*, 1 id., 206; *Leffinwell* v. *Warren*, 2 Black., 603; *Nesmith* v. *Sheldon*, 7 How. [U. S.], 818; 2 Pet., 492; *Hull* v. *Hull*, 2 Strobt. Eq. [S. Car.], 179; *Thompson* v. *State*, 28 Ala.. 17; *Joby* v. *Wilson*, 1 Dev. & Bat. Eq., 568; *Borden* v. *Fitch*, 15 J. R., 121; *Vischer* v. *Vischer*, 12 Barb., 640; *Jackson* v. *Jackson*, 1 J. R., 424; *Hanover* v. *Turner*, 14 Mass., 227; *Barber* v. *Root*, 10 id., 262.) The divorce granted in Louisiana was authorized by the laws of that State. (Laws of Louisiana 1870, p. 80; Laws of Louisiana 1877, p. 192; Cons. of 1868, art. 114; *St. Martin* v. *City of New Orleans*, 14 La. An., 113; 14 Ohio, 473; *In re Succession of Winn*, 25 La. An., 216; *Michel* v. *Wiel*, id., 208.) The act of 1870, not being retroactive in its operation, and not impairing the validity of a contract, was not unconstitutional. (*Dart. College* v. *Woodward*, 4 Wheat., 629; *Morse* v. *Gould*, 1 Kern., 291; *Starr* v. *Hamilton*, Deady [Oregon], 268; *Burch* v. *Newberry*, 10 N. Y., 391; *Southwick* v. *Southwick*, 49 id., 520; Cooley Const. Lim., 361.)

Fᴏʟɢᴇʀ, J. This is a suit in equity, brought by the plaintiff against the defendant, for a divorce *a vinculo matrimonii*. She alleges that she is now his wife. She bases her right to a dissolution of the marriage, on an allegation of adultery committed by him.

That the plaintiff and defendant were once married is admitted. It is also conceded, that since the marriage the defendant has formed a matrimonial alliance in fact, with another woman than the plaintiff, and has lived and cohabited with that woman as his wife. He is therefore guilty of

adultery in the eye of the law, and the plaintiff should have the judgment asked by her; unless he can justify his act by showing it to be lawful. The justification set up by him in this suit is, that prior to the commencement of it, and prior to that matrimonial alliance in fact, he had obtained a judgment against the plaintiff of a dissolution of the relation of marriage once existing between them, whereby he was set at liberty to marry again.

That judgment was rendered by a court in the State of Louisiana. From the exemplified copy of the record of it put in evidence, it appears of due formality. The findings of the Special Term, made in the case in hand, state that it remains unreversed, of full force and effect, and by virtue of the laws of Louisiana valid and effectual between the defendant and the plaintiff. If that finding cannot be impeached, that judgment furnishes a complete defense to this suit. For, to state what is familiar, full faith and credit are to be given in each State to the judicial proceedings of every other State; and the effect thereof may be prescribed by general laws of Congress. (U. S. Const., art. 4, § 1.) Congress has prescribed, that they shall have such effect in every court within the United States, as they have by law or usage in the courts of the State in which they are taken. (Act of Congress, May 26, 1790, chap., 11; U. S. Rev. Stats., p. 170, § 905; *Mills* v. *Duryee,* 7 Cranch, 481.) However, the jurisdiction of the court of another State in which a judgment has been rendered, is always open to inquiry in the courts of this State; and if that court has exceeded its jurisdiction, or has not obtained jurisdiction of the parties, the proceedings are *coram non judice* and void. (*Dobson* v. *Pearce,* 12 N. Y., 156; *Kinnier* v. *Kinnier,* 45 id., 535.) Or if the judgment has been procured by fraud upon the legal rights of the party against whom it is rendered, it may be questioned collaterally for that reason in the courts of this State. (See cases last cited, and *Kerr* v. *Kerr,* 41 N. Y., 272.)

It is claimed by the plaintiff that that judgment was got

by fraud upon her and upon the court, and that it is void for want of jurisdiction in the court which assumed to render it, in that the court had neither jurisdiction of the subject-matter nor of the party defendant.

We do not think that the allegation of fraud is maintained. It is manifest that the plaintiff, her relatives, and intelligent, experienced and upright counsel retained for her both in this State and in the city where the court sat, had early and ample notice in fact of the commencement of the proceedings, of the nature of them, what judgment was sought, and upon what allegations the alleged right to that judgment was placed. Neither she nor they were deceived or taken by surprise, nor hindered nor debarred from contesting the action of the defendant, nor ignorant at an early day of the rendition of the judgment, and of the ground on which it was placed; nor prevented from taking steps to reverse it for error, or to correct it for irregularity, nor without the power and legal right to do so. With all requisite knowledge of every step taken by the defendant in the case, she and they concluded to rest upon the lack of jurisdiction in the court to entertain the cause and to pronounce judgment in it. That the defendant was admitted to testify in the suit in his behalf, was not a fraud upon the plaintiff nor upon the court. In its nature it was a thing patent to the court, which knew as well as the defendant of the occurrence of it, and was not deceived or misled into the reception of his testimony. (See *Wottrich* v. *Friedman*, in MS. Ct. of Appeals, 20 Nov., 1877.)* It was not a thing which took away jurisdiction. If it was an illegal thing, it was an error of the court, which gave ground for attacking the judgment in the same suit, but does not afford reason for questioning it collaterally. If it be granted that the truth was to the full extent, that the plaintiff left the household of the defendant without his opposition to that course, or even with his aid and consent, and that such fact was not disclosed in his petition, I do not think that fraud was thereby committed upon the court, and still

*71 N. Y., 601.

less upon the plaintiff. The gravamen of his action, and the ground of the judgment of divorce given by the court, was not the desertion of the defendant and his household by the plaintiff, but her conduct before she left of such a nature as to render his living with her insupportable; so that the manner and accompaniments of the actual separation of the parties were not vitally material. The material matter in the proceeding, and in the judgment, was the conduct which led to that separation and produced it.

The letter written by the defendant to the plaintiff, which indicated to her no purpose more extreme than a separation from bed and board, would have been a circumstance of some moment under an allegation of fraud, were it in the least apparent that the plaintiff had been misled by it; but it was as plain to her and her advisers from the actual beginning of the legal proceedings as it is now, that the object of the defendant was a dissolution of the marriage. Such is the prayer of his petition, and the contents of it were known to her selected counsel, if not to her.

Nor was the absence from the petition of an allegation that the plaintiff was out of the State of Louisiana and abiding in another State an unusual thing in the practice of that State, as is shown by the testimony taken there by commission.

It is not, of course, denied that there may be such fraud upon a tribunal and upon the opposite party in judicial proceedings as will vitiate a judgment obtained thereby. (*State of Michigan* v. *Phœnix Bank*, 33 N. Y., 9.) But the fraud in such case is made up of the same constituents as is fraud in any other case, and the same state of facts must appear which is required in other cases. There must be fraudulent allegations and representations designed and intended to mislead, with knowledge of falsity, and resulting in damaging deception. (*Id.*) The facts of this case fall short of that.

We come now to consider the question of the jurisdiction of the court.

It is plain that every State has the right to determine the

*status*, or domestic and social condition of persons domiciled within its territory. (*Strader* v. *Graham*, 10 How. [U. S.], 82; *Cheever* v. *Wilson*, 9 Wall., 108; *Barber* v. *Root*, 10 Mass., 260; *Kinnier* v. *Kinnier*, *supra*.) So it is that every State may determine for itself, for what causes that *status* may be changed or affected, and hence upon what grounds, based upon what acts or omissions of persons holding the relation to each other of marriage, they may be separated and that relation dissolved ; and it may prescribe what legal proceedings shall be had to that end, and what courts of, its sovereignty shall have jurisdiction of the matrimonial *status* and power to adjudge a dissolution of that relation. All citizens of that State, domiciled within it and owing to it allegiance, are bound by the laws and regulations which it prescribes in that respect. When, without infringement of the Constitution of the State, its statues have conferred upon any of its courts the general power to act judicially upon the matrimonial *status* of its citizens, or of persons within its territorial limits, and to adjudge a dissolution of the relation of husband and wife ; then, we take it, such court has jurisdiction of the subject-matter of divorce. A text-writer of repute says, that "it is the act or acts which constitute the cause of action," which " is the subject-matter in a suit for divorce." (See 3 Am. Law Reg. [N. S.], p. 206.) And in *Holmes* v. *Holmes* (4 Lansing, 388), the learned and able judge who delivered the opinion of the court speaks of the acts relied upon to obtain a divorce as being the subject-matter. The definitions of lexicographers imply a broader scope to the phrase, a more general meaning. It is : " The cause ; the object ; the thing in dispute." (Bouvier Law Dict.) " The matter or thought presented for consideration in some statement or discussion." (Webster Dict.) Power given by law to a court, to adjudge divorces from the ties of matrimony, does give jurisdiction of the subject-matter of divorce. Though the proceedings before that court, from first to last of the testimony, in an application for divorce, should show that a state of facts does not exist which makes a legal cause for

divorce, yet it cannot be said that the court has not jurisdiction of the subject-matter; that it has not power to entertain the proceeding, to hear the proofs and allegations, and to determine upon their sufficiency and legal effect. Then jurisdiction of the subject-matter does not depend upon the ultimate existence of a good cause of action in the plaintiff in the particular case. (See *Groenvelt* v. *Burwell*, 1 Ld. Raym., 466, 467.) A court may have jurisdiction of all actions in assumpsit, of that subject-matter. An action by A., in which judgment is demanded against B. as the indorser of a promissory note, falls within that jurisdiction. Such court may entertain and try the action, and give a valid and effectual judgment in it. Though it should appear in proof that there had never been presentment and demand, nor notice of non-payment, yet a judgment for A. against B., though against the facts, without facts to sustain it, would not be void as rendered without jurisdiction. It would be erroneous and liable to reversal on review. Until reviewed and reversed, it would be valid and enforceable against B. and entitled to credit when brought in play collaterally. If given by such a court in a sister State against one of whose person that court had jurisdiction, it would be a judgment which the courts of this State would be bound to credit and enforce. Jurisdiction of the subject-matter, is power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under that general question. One court has jurisdiction in criminal cases; another in civil cases; each in its sphere has jurisdiction of the subject-matter. Yet the facts, the acts of the party proceeded against, may be the same in a civil case, as in a criminal case—as, for instance, in a civil action for false and fraudulent representations and deceit, and in a criminal action for obtaining property by false pretenses. We should not say that the court of civil powers had jurisdiction of the criminal action, nor *vice versa*, though each had power to pass upon allegations of the same facts. So that there is a more general meaning to the phrase

"*subject-matter*," in this connection, than power to act upon a particular state of facts. It is the power to act upon the general, and so to speak, the abstract question, and to determine and adjudge whether the particular facts presented call for the excreise of the abstract power. A suitor for a judgment of divorce may come into any court of the State in which he is domiciled, which is empowered to entertain a suit therefor, and to give judgment between husband and wife of a dissolution of their married state. If he does not establish a cause for divorce, jurisdiction to pronounce judgment does not leave the court. It has power to give judgment that he has not made out a case. That judgment would be so valid and effectual as to bind him thereafter, and to be *res adjudicata* as to him in another like attempt by him. If that court, however, should err, and give judgment that he had made out his case, jurisdiction remains in it so to do. The error is to be corrected in that very action. It may not be shown collaterally to avoid the judgment, while it stands unreversed, whether the judgment be availed of in the State of its rendition, or a sister State ; granted always that there has been jurisdiction of the parties to it. The judgment is in such case also, *res adjudicata* against the party cast in judgment. The relevancy of this discussion will appear when we come to consider more particularly some of the points made by the plaintiff.   We conclude that jurisdiction of the subject-matter is the power lawfully conferred to deal with the general subject involved in the action.

It appears from the proofs in this case that by the Constitution of Louisiana, the General Assembly was authorized to enact laws regulating the granting of divorces.   (Art. 113.) That the judicial power was vested in certain courts, among which were parish courts ;   that there were provided by Constitution, seven district courts for the parish of Orleans; that certain of these, among which was the fifth, had exclusive jurisdiction or power in all civil cases except probate, and were permitted such further jurisdiction not inconsistent with the Constitution as should be conferred by law.   (Art. 83.)

It also appears that the General Assembly conferred upon the Fifth District Court of the city of New Orleans jurisdiction to try suits for divorce, when it had jurisdiction of the person. (Act No. 66 of 1868.) It thus appears that the Fifth District Court for the parish of Orleans, in the city of New Orleans, the court which rendered this judgment, had lawful jurisdiction of the subject-matter of divorce.

The plaintiff, however, makes the point against the validity of the judgment, that it was void in Louisiana as wholly unauthorized by, and in conflict with, the Constitution of the State. And here it is, that it is of import to know what is meant by the term "jurisdiction of the subject-matter." If it means no more than power to act when, and not till when, a state of facts is proven which exactly squares with the grounds for divorce prescribed and established by constitutional and valid statutes, then we must inquire what the Constitution of a State permits in the way of statutory regulation, and whether the proofs in any case show that the court which in that case adjudged a divorce had sufficient evidence before it to enable it to give judgment. In effect, we must review the judgment upon the law and the facts. If the term means what we have above pointed out that it does mean, then we are to give credit to the judgment of a court which, having power to act upon the general subject of divorce, has heard the cause, and has proceeded to judgment.

The point made is based upon a provision in the Constitution that no *ex post facto* or retroactive law, nor any law impairing the obligation of contracts, shall be passed, nor vested rights be divested, unless for purposes of public utility and for adequate compensation. (Const. of Louisiana, art. 110.) It is also based upon the fact, that the statute upon which it is said that the defendant relied, in his proceeding in the parish court for a divorce, was passed in March, 1870, while the conduct or acts of the plaintiff, which he claimed gave ground for that proceeding, took place in 1869, before the passage of that act. I will not

state it more minutely here, for the reason that we do not mean to go into the question as to whether or not that act was or was not a retroactive law, as applied to the facts in this case; or whether or not it was an act affecting the remedy only; or whether or not other provisions of the Constitution, or the usage and practice of the Legislature and the courts under that instrument, may not have warranted it. It is not for us, in such a case as this, and as to the point now under discussion, to lay the judgment of another State, of competent jurisdiction of the subject-matter, by the side of the organic law of that State, and to determine whether that judgment reaches beyond, or falls short of the limit of that instrument. A casual reading of *Simonds* v. *Simonds* (103 Mass., 572) would take that case, as warranting by its doctrine, an inquiry into the constitutionality of the act of Louisiana relied upon by the defendant. A closer reading shows peculiarities not presented here. That was a libel in a Massachusetts court by a wife for a divorce *a vinculo* from her husband on the ground of his adultery. He defended, admitting his cohabitation with another woman, but justifying it on the ground of his divorce from the libelant by a court in Maine, and his marriage thereafter with the second woman. It appeared that he was divorced by a court in Maine, acting under a special statute of the Legislature of that State, giving it authority to hear and adjudge upon his case. The Massachusetts court disallowed his defense, on the ground that by the law of the courts in Maine such a special statute was unconstitutional, and that it would not be presumed that the Legislature of that State would have passed it, unless the libelee had fraudulently concealed the true *status* of himself and the libelant, which was that she was living apart from him — she in Massachusetts and he in Maine — by virtue of a judicial decree of a court of the former State adjudging separation of them from bed and board. The concluding remarks of the court in the case cited are significant. "The divorce in this case    *    *    *    was under a special statute, applying to a single case, and therefore uncon-

stitutional. This being so, it is not necessary to inquire whether, *if it were regarded as a valid divorce in Maine*, it would have any validity in this commonwealth." It is apparent that the Massachusetts court did not assume to pass primarily upon the validity of the special statute, and of the judgment of divorce rendered under it. It satisfied itself by the decisions of the courts of Maine, which it cited (*Lewis* v. *Webb*, 3 Greenl., 326; *Durham* v. *Lewiston*, 4 id., 140; *Adams* v. *Palmer*, 51 Maine, 480), that the divorce would not be considered valid in that State, and therefore felt justified in holding it invalid in Massachusetts. Had there been no ground in the law as declared by the courts of Maine for saying that the divorce was invalid there, and had it appeared as a judgment unreversed and valid, and entitled to full faith and credit there, by law, or the usage of the courts in that State, we may doubt whether the court of Massachusetts would have felt at liberty to pronounce it invalid for the reasons given by it, and whether it would not have considered itself bound to recognize and yield to it under the Constitution and the laws of Congress. Now, we have not such a case here as was presented in *Simonds* v. *Simonds* (*supra*). There is no proof here, either by witnesses learned in the law of Louisiana, or by decisions of the courts of that State cited to us, that the judicial power of that State has regarded legislative enactments affecting the *status* of married persons, by the application of the provisions of them to the past conduct of those persons, or either of them, as contravening the Constitution of the State. It is a subject on which much has been said by courts in different States, and not with entire accord; and in several cases in different States it has been held, as we gather from decisions, that a law authorizing a judgment of divorce on account of acts done before its passage, is not in conflict with a constitutional provision against retroactive or retrospective laws. In the face of a formal and deliberate judgment of a court of the State of Louisiana decreeing a divorce, with the Constitution of the State and the laws of its General Assembly

before it, we may not assume that the law of that State as settled by its judiciary is against the validity of the statutes, and of this judgment under them; nor may we apply to that Constitution and those statutes our own interpretation and adjudication; for that would be to substitute the law of New York for the law of Louisiana. We find before us a judgment in due form, rendered by a court of that State having jurisdiction of the general subject-matter, standing unreversed and of efficacy there, by which the judiciary there has declared the *status* of two of its citizens, and by virtue of which that sovereignty has permitted the assumption by one of them of new matrimonial relations. We may not, under the Constitution and laws of the United States, withhold faith and credit from that judicial proceeding, nor hesitate to follow it in its consequences upon the parties before us in the case at our bar; provided, however, that that court had jurisdiction of the person of those two citizens, as well as jurisdiction of the subject-matter. Of their own jurisdiction, so far as it depends upon municipal laws, the courts of every country are exclusive judges. In pronouncing a judgment, they of necessity decide in favor of their jurisdiction. It is conclusive, if they have jurisdiction of the subject-matter. (*Per* MARSHALL, C. J.; *Rose* v. *Himely*, 4 Cranch, 241.)

The plaintiff also makes a point against the validity of that judgment, that it is wholly unauthorized by and in conflict with the statutes of Louisiana.

Besides the general answer just stated, this point admits of a particular reply. It appears that when the defendant began his proceeding for divorce in the court of Louisiana, there was a statute of that State, passed March 9th, 1870, which gave a right to a divorce *a vinculo* for a cause, the existence of which, in his case, the defendant established to the judicial satisfaction of that court. That statute was professedly an amendment and re-enactment of an article of the Civil Code of the State. On the 14th March, 1870, another statute was enacted, declaring that no judgment of divorce

should be had for that cause, unless there had been a pre-
vious judicial separation of the parties from bed and board,
and the expiration of one year therefrom without recon-
ciliation. If these two statutes stood by themselves, it might
be, though there is in the latter no express repeal of the
former, that there was a repeal of it by implication. But
there was other legislation in that year in that State, and at
the same session of the General Assembly, of a general
character, involving the *status* of its citizens as to marriage
and divorce. Several acts were passed in *pari materia*,
including a revision of the statutes of the State and of its
Civil Code, under a previous authorization. The act of seven-
teenth March (*supra*) would seem to have been a part of
it. It became necessary to provide against conflict among
the enactments of this revision, and the statutes passed from
day to day at the same session. So, on the 28th February,
1870, an act was passed having in view all these things,
which declared that all acts of that session in conflict with
the revision should have precedence thereof, and be held as
law in opposition thereto, and as a repeal thereof so far.
Moreover, when, after this, the authorized revision came to
be authoritatively published as finally shaped by all the
legislation of the session, it contained the same provision for
divorce as that found in the act of ninth March (*supra*). It
is not to be denied that at first sight there seems to be con-
fusion among these statutes; but the courts of that State
have passed upon the question what statutes were left in
operation as a result of all the legislation of the year 1870,
and decisions upon kindred cases are to the effect that this
statute of ninth March (*supra*) was left a valid and subsist-
ing law. (*In the Succession of Winn*, 25 Lou., Ann. R.,
216; *Michel* v. *Wiel*, id., 208.) There is also a legis-
lative expression that that act was in force; for in 1877
it was deemed needful to make a repeal of it, and on
30th April, 1877, an act repealing it was passed. There is,
also the finding in this case of the Special Term, that the
judgment is valid by the laws of Louisiana, which implies a

finding of what those laws were. There is also the refusal to find as a fact, on the request of the plaintiff, that the court in New Orleans was not authorized to grant a divorce for the causes set forth in the petition, or proved in that proceeding. We cannot say that there is no testimony to sustain that finding and that refusal, so far as this question of the existence of the act of March ninth (*supra*), is concerned. Besides that, there comes back the consideration which we have presented in disposing of the constitutional question raised by the plaintiff. That court having, as we have seen, jurisdiction of the subject-matter, has received the petition of the defendant and heard his proofs, and has adjudged that he has made out a case entitling him to a dissolution of the marriage with the plaintiff. In doing this, that court necessarily had to pass upon the facts presented by the evidence, and to determine whether the conduct and the acts of the plaintiff were made, by law of the State of Louisiana, a cause for divorce. In doing that, it had to pass upon the validity of the statute above noted, and upon its existence and operative power as a part of the law of the State. The judgment of that court decreeing that divorce is an adjudication that the statute of the ninth March (*supra*) was, at the date of the judgment, a part of the law of the State, and that the acts and conduct named in it were good ground for a dissolution of marriage. We must say, as we said before, that that judgment, standing unreversed in that State, is a judicial proceeding of another State to which this court must give credit, if the court rendering it had jurisdiction of the person of the parties affected by it. If there was constitutional and statutory power to make a decision in the case, a wrong decision does not impair that power, nor the validity of the judgment to which the decision led, when it is presented collaterally. (*Kinnier* v. *Kinnier, supra.*) The decisions of the tribunals of a State as to the true construction of the laws of their own sovereignty are binding upon the Federal courts (*Walker* v. *Harbor Commissioners*, 17 Wall., 648; *Galpin* v. *Page*, 18 id., 350; *Bailey* v. *Magwire*,

22 id., 215; *Secombes* v. *R. R. Co.*, 23 id., 108) ; and why not on the judiciary of other States in all matters within the jurisdiction of the tribunals first named ?

It is now to inquire whether the court in Louisiana had jurisdiction of the person of the parties to the judgment. That it had of the person of the defendant in this case, may not be disputed. Louisiana was not only the State of his domicile, but of his actual residence and presence at the time. Jurisdiction of the person is got by the service of process upon the party personally within the territorial jurisdiction, or by his voluntary appearance in the suit. I think it may also be got of the defendant, in a suit for divorce, when he is a domiciled citizen of the State in which the court has territorial jurisdiction, by such proceeding in the nature of service of process of the court, as the law of that State has made the substitute and equivalent for service of process upon the person within the jurisdiction. I know that it has been said that it is a principle of natural justice, that no one shall be bound by a judgment who has not been served with process, and that a custom not to summon or give notice to a defendant is contrary to the first principles of justice, and cannot be good. (*Fisher* v. *Lane*, 3 Wils., 297; *Rex* v. *Un'y of Cambridge*, 8 Mod., 148, 164.) In later days it is no longer an anomaly that some of the rights of parties may be adjudged upon, though they have not been brought before the courts, either by voluntary appearance or by service of process upon the person, and though jurisdiction has been acquired in no other way than by a substitute for personal service. Most frequently such adjudications are *in rem*, as in an action begun by attachment of property, or foreclosure of mortgage or other lien thereon, and the service of summons or other original process is a substituted one. Then, however, judgment is not permitted *in personam* against a defendant not a resident of the State. (*Schwinger* v. *Hickok*, 53 N. Y., 280.) But they are not confined to such cases. We have had occasion lately to examine the question with some care in *Gibbs* v. *Queen Ins.*

*Co.* (63 N. Y., 114), and we came to the conclusion that a statute of this State is valid, that provides for substituted service upon a defendant not a citizen of this State, and absent from its jurisdiction ; and that a judgment based thereupon is good *in personam* within our jurisdiction. It is to be observed, however, that in that case the laws of the State had given to the defendant certain privileges within it, on the defendant submitting in advance to the jurisdiction of the State courts. We understand that the Supreme Court of the United States has gone further, and to the extent that a judgment so got in one State is enforceable in another *in personam* (see note at foot of case last cited) ; and if it may be so with a defendant not a citizen of the State, *a fortiori* with a citizen of the State, one having his domicile there, and owing it allegiance and bound by its laws. It was upon such ground that the judgment was placed in *Douglass* v. *Forest* (4 Bing., 686). There decrees had been pronounced in Scotland against a native of that country, who had gone out of its jurisdiction and never returned, and had no notice in fact of the proceedings against him. He had been summoned by posting, according to the law of Scotland. The decree adjudged him to pay a certain sum of money. The Court of Common Pleas of England held those decrees consistent with the principles of justice. The ruling was based upon the fact that the defendant owed allegiance to the sovereignty by which they were pronounced. See, also, to the same effect, *Becquet* v. *Mac-Carthy* (2 Barn. & Ad., 951); *Martin* v. *Nicolls* (3 Simons, 458). And, so is the utterance of BLACKBURN, J., *obiter*, perhaps, or by way of illustration and argument in *Schibsly* v. *Westenholz* (Law Rep., 6 Q. B., 155), as follows : " If the defendants had been, at the time of the judgment, subjects of the country whose judgment is sought to be enforced against them, then, we think, that its laws would have bound them." He was speaking of the laws of France, providing for a substituted service upon a party absent from the territory of that realm. We do not adopt the

doctrine of these cases now, further than to apply it to this case.

The provision of our Code of Procedure (§ 135 of Old Code, § 438 of New Code), for the service of summons upon an absent defendant by publication in an action for divorce, is of the same kind of legislation. Where the defendant was a citizen of this State when the marriage was contracted, and is still domiciled here, it is not to be doubted that, as a general rule, such service in such suit is good and sufficient to confer jurisdiction of the person. It is a part of the law of the State, of which the defendant is a subject and a citizen. That law binding upon him is an assent given by him, that there may and will be acquired jurisdiction over him to hear the case and render judgment; affecting to an extent his personal rights. As a denizen and a citizen of the State, he owes it allegiance, and is under the force and authority of its laws; and so long as he remains in that relation, he cannot throw off his subjection by the act of temporary or prolonged absence from the State. He is still amenable to those laws, and bound by their provisions as to substituted service of process. (*Black* v. *Black*, 4 Bradf., 174; see, also, *Sheldon* v. *Wright*, 5 N. Y., 497–516.) And where the case is that of a citizen of another State having his domicile there, and a judgment against him there on a substituted service—such as the law of his allegiance has authorized in the case of an absent defendant—he is bound by it, though actually abiding in this State; and when it has been duly made, he is subject in person to the State court duly awarding it. (*Hood* v. *Hood*, 11 Allen, 196; and see *Cooper* v. *Reynolds*, 10 Wall., 308–319.) "The right of the Legislature to prescribe such notice" (says Cooley, in Const. Lim., page *404), "and to give it effect as process, rests upon the necessity of the case, and has long been recognized and acted upon." The authorities cited by that text-writer sustain his proposition. (*In re Empire City Bank*, 18 N. Y., 200; *Rockwell* v. *Nearing*, 35 id., 314; *Nations* v. *Johnson*, 24 How. [U. S.], 195.) It is well to say that we are now speaking of a suit affecting the

matrimonial relation, a subject peculiar, and that we do not now speak generally, or as to anything but that relation and the dissolution of it.

There are numerous authorities, and the plaintiff has cited some of them, to the effect that a judgment of another State, got against a resident of this State, and who has never been a citizen of that, without personal service of process or voluntary appearance, is not a valid judgment, and may be inquired into in our courts, and on such facts appearing may be disregarded as having been rendered without jurisdiction. (*Kerr* v. *Kerr, supra; Hoffman* v. *Hoffman,* 46 N. Y., 30; and others.) We have not seen a decision which so holds, where the defendant was a citizen of the other State, and the court thereof proceeded upon a substituted service, in accordance with the laws of that State. *Borden* v. *Fitch* (15 J. R., 121), which is perhaps the leading case in this State, rests upon the fact that the defendant, in the judgment there impugned, had never been domiciled in the State in which the judgment was rendered. It would be tedious to name and review all the cases in this State. In the earlier of them there was not harmony with those of the Federal courts, and a disposition was manifested to treat the judgments of the court of another State as like those of courts of a foreign country. I think that the result of the decisions of this State, at this time, is this: That when courts of another State have jurisdiction of the subject-matter, and of the person, they are to be credited collaterally; that jurisdiction of the subject-matter is to be tested by the powers conferred by the Constitution and laws of the other State (*Kinnier* v. *Kinnier, supra*); and that as to jurisdiction of the person, they go no farther against it than that if the defendant is a domiciled citizen of this State, jurisdiction of him by the courts of another State is not acquired, save by personal service of process or his voluntary appearance. When the word resident is used in them, it must be taken as synonymous with domiciled person, as in *Vischer* v. *Vischer* (12 Barb., 640). We know of no case in this State, that has held that in a

suit for divorce, jurisdiction of the person of a domiciled citizen of a State may not be acquired by the courts of that State, by a substituted service of process, though at the time he be in fact abiding in another State. And this seems to be conceded in Massachusetts, whose rules have been quite rigid on this subject. (See *Bissell* v. *Briggs*, 9 Mass., 464; *Barber* v. *Root*, 10 id., 262.) The adjudications in some States have gone farther. (*Ditson* v. *Ditson*, 4 R. I., 107; *Harding* v. *Alden*, 9 Greenl., 140; *Tolen* v. *Tolen*, 2 Blackf., 407.) In some not so far at first. (*Irby* v. *Wilson*, 1 Dev. & Bat. Eq., 568); but to be varied from subsequently. (*The State* v. *Schlatcher*, Philips Law R. [No. Car.], 520.)

The reasons given for the validity of substituted process are not always alike, or uniformly agreed upon. It is sometimes said that a judgment of divorce, acting upon the *status* of married persons, is in its nature a judgment *in rem;* and then it is conceded that a judgment got without personal service of process, or voluntary appearance, is, so far as the *res* is affected, a valid adjudication. It is sometimes said that the laws regulating marriage and authorizing judgments of divorce, and prescribing the means of obtaining judgment thereof, are in the nature of police regulations, and that every State has the right to prescribe and enforce them in behalf of public order and good morals, and that the result has of necessity to be accepted by other States.

It is our conclusion, whatever grounds may be stated, that in a suit for divorce, a valid judgment *in personam*, so as to affect a dissolution of the marriage contract, which shall be prevalent everywhere, may be rendered against a defendant not within the territorial jurisdiction during the progress of the suit, if that be the place of his citizenship and domicile, though process be served upon him only in some method prescribed by the laws of that jurisdiction as a substitute for personal service, and though he has not voluntarily appeared. We need, in this case, to take no position more extreme than this. It is now to inquire if the plaintiff in this suit was in that condition when the proceedings were pending

in which the judgment set up by the defendant here was rendered.

She was not within the State of Louisiana at the time of the commencement of the legal proceedings. There was no personal service upon her of process of the court. She did not voluntarily appear, nor authorize an appearance for her. There was an appointment by the court of a *curator ad hoc*, without an allegation in the petition that she was beyond the State. This, as it appears from the evidence, was, by the laws of that State, a valid substitute for a personal service of process in the case of a domiciled defendant in a suit for divorce, who is absent from the State when the suit is commenced. That she once had her domicile in that State is plain. It was not her domicile of origin; but she was abiding there when she was married with the defendant. After her marriage with him she continued to live there, in his household, as his wife, and of his family, having no separate domestic *status* or interest. There is no doubt that New Orleans was, before the marriage, during the continuance of the married relation, and has been ever since, the domicile of the defendant. The domicile of the husband is *prima facie* the domicile of the wife. (*Whitcomb* v. *Whitcomb*, 2 Curties, 351; *Warrender* v. *Warrender*, 9 Bligh, 89; *Greene* v. *Greene*, 11 Pick., 411.) The plaintiff was, therefore, if not before and at the time of the ceremony of marriage, at least after it had been performed, and as long as she remained in his household, domiciled in Louisiana, a denizen and citizen of that State, subject to its laws and bound by them. There are, however, exceptions to the rule, one of which is invoked by the plaintiff in this suit, so that in certain cases a married woman may have a domicile in another jurisdiction than that of her husband. This is so, when they are living apart under a judicial decree of separation, or when the conduct of the husband has been such as to entitle the wife to an absolute or limited divorce. She may acquire a separate domicile whenever it is necessary for her to do so. But the right to do so springs from the

necessity for its exercise. (See *Cheever* v. *Wilson*, 9 Wall., 108–124.) These exceptions arise naturally from the reasons of the rule itself, which are the theoretic identity of person and of interest between the husband and the wife in the eye of the law, and the presumption arising that the home of one is the home of the other, and also her duty to dwell with him, (*Harteau* v. *Harteau*, 14 Pick,, 181.) This reason ceases, when a judicial decree has separated and adjudged them to live apart. It is weakened in power, when the conduct of the husband has been such as to make it proper for the wife to seek relief from her obligation to have the same home and interest with him; though a strong ground of this exception seems to be that, were it not so, the husband might constantly change his domicile, and drawing that of his wife after his, prevent her finding a court having that jurisdiction of person which would enable her to bring her suit for redress and relief. It is evident that this reason will also operate in favor of the husband, so that when he has ground for a suit by reason of the misconduct of the wife, she may not so often change her domicile as to baffle him in his pursuit of a remedy. In the case in hand, the first ground for a woman acquiring a domicile other than that of her husband did not exist. Nor are we able to say that the second did. The Special Term has found, as a fact, that by the laws of the State of Louisiana, the domicile of both the plaintiff and the defendant remained and was in that State until the judgment of divorce between them was there rendered. There is not in the findings anything on which to ground a conclusion that the plaintiff, at the time when she left the defendant's household, had cause in his conduct, or otherwise, for a suit for absolute or limited divorce. On the contrary, to repeated requests of the plaintiff to find facts which would show, or tend to show, that she had such cause, the Special Term gave a refusal. I am constrained to say that the evidence sustains the refusal, and tends to prove that whatever cause there was, for a separation of the plaintiff and defendant, or for other appeal to the courts in the matter of their marital

relations, existed in the feelings and conduct of the plaintiff, and not in the conduct of the defendant. Nor does it appear that she intended when she left New Orleans to change her domicile, or to take proceedings against her husband, or that she conceived that she had cause therefor. I see no reason to hold that the domicile of the plaintiff was other than that of the defendant, her husband. That domicile, as we have seen, was in the State of Louisiana. Thus they were both subject and amenable to the laws of that State, and to the lawful rules and practice of its courts. The law of that State properly gave jurisdiction to its courts charged therewith to decree a divorce between them, for any cause allowed by the law of that government, and it was for that State to determine for what causes and to what extent a divorce should be adjudged between married persons; it was exclusively for that State to determine for itself the *status* of all persons domiciled within it. (*Kinnier* v. *Kinnier, supra.*) We think that it appears from the evidence that the provisions of the Louisiana law, for the service of process by substitution, were fully observed. It is objected that there is no allegation in the petition that the plaintiff was absent from the State. But it does appear from the record that a *curator ad hoc* was appointed for her. In some way the fact which warranted that proceeding must have come to the judicial notice of the court. It is shown by testimony that by the practice in that State, this need not be by allegation in the petition, and may be by oral suggestion of counsel in open court. The prayer of the petition asks for a citation to the plaintiff through an attorney to defend for her, and an order was made by the court to that end by the appointment of a *curator ad hoc.* The fact is in the case without objection and beyond dispute, that the plaintiff was absent from the State, and it does appear from the record that the method prescribed by law for such case was taken. This meets the objection. The facts of the case are covered by the statutory provisions for substituted service. (Civil Code Louis., arts. 56, 141, 3522, sub. 3; Rev. Laws of Louis.,

No. 96, § 1190.)    We have examined the cases cited in this connection by the plaintiff.    They lay down no rule in hostility with the above positions.

It therefore appears that as the judgment of divorce, set up by the defendant, was rendered by a court having jurisdiction of the subject-matter, and of the persons of the plaintiff and defendant, and was obtained without fraud upon that court or upon the plaintiff, it is a valid and effectual judgment of the State of Louisiana, to which full faith and credit must be given in the courts of this State.    It affords to the defendant a complete defense to this suit.

The judgment appealed from should be affirmed.

All concur, except RAPALLO and MILLER, JJ.. not voting.

Judgment affirmed.