(66 Misc. Rep. 302.)

## HARRY v. DODGE.

(Supreme Court, Special Term, Onondaga County. February, 1910.)

1. DIVORCE (§ 327*)—DECREE—VALIDITY—DOMICILE OF WIFE.

Where a husband obtains a divorce in a foreign state, though the wife be in New York and does not appear in the action and is only served by publication, in the absence of evidence showing that she had acquired a domicile other than that of her husband, the decree is valid, as her domicile will be presumed to have been his.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. § 327.*]

2. DIVORCE (§ 327*)—VALIDITY OF DECREE—DOMICILE OF WIFE.

Where, while husband and wife were living in New York, they separated, and the husband went to a foreign state and procured a divorce, the wife's domicile will be presumed to have remained in New York, where she continued to reside, and the subsequent marriage of the husband during her lifetime will be presumed invalid.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. § 327.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Grace G. Harry against George W. Dodge.  Judgment for plaintiff.

Lindsay & Mackie, for plaintiff.

Warnick J. Kernan, for defendant.

ANDREWS, J.  One George W. Dodge died in the town of Augusta, Oneida county, on March 9, 1881.  His will, which was thereafter duly admitted to probate, devised and bequeathed the use, profit, and income of a portion of his property to his son, Nathaniel Dodge, during the latter's life, and after his death the principal to his children.

Nathaniel Dodge, sometimes called "Judge Douglas Dodge," was married to Frances A. Utter of Whitesboro, N. Y., on February 16, 1881.  The plaintiff, the only child of this marriage, was born on June 12, 1883.  In November, 1883, Nathaniel Dodge and his wife "separated" or "parted."  Thereafter he went to the territory of Dakota; and on the 7th day of May, 1884, began, in that territory, an action for divorce against his wife, under the name of Judge D. Dodge, charging adultery, desertion, and other offenses.  Mrs. Dodge, after the separation, spent a few days in New York City and then came to Utica, where she resided until August, 1884.  She then lived in Bridgewater, Oneida county, for 12 years, and since that time in Ilion, Herkimer county.  She never went to the territory of Dakota and had no knowledge of the divorce proceedings until some years after the decree was granted.

The summons in the divorce action was put in the hands of the sheriff of Spink county, Dak., for service; and his return showed that the defendant was not a resident of the territory.  Mr. Dodge himself, in an affidavit under date of May 9, 1884, stated that he was a resident of the territory, but that the defendant was not, residing in the state of New York.  Thereupon, on May 28, 1884, the court made an order for the service of the summons by publication upon the defendant, and that the same be mailed to her at New York City, "her last known place of residence," and reciting that it appears that she is not a resident of the territory of Dakota, and is a resident of the city of New York.  Upon this service, and without personal appearance by the defendant, a decree of absolute divorce was granted, against her and in favor of the plaintiff, on September 30, 1884.

On May 1, 1889, Nathaniel Dodge and one Agnes Cleary were married at the city of Syracuse, N. Y., and in May, 1890, the defendant, the child of Agnes Cleary and Nathaniel Dodge, was born.  He is the only child of such alleged marriage.  Nathaniel Dodge died in the city of Oneida on November 10, 1907.  Since the death of Nathaniel Dodge, the trustee of the estate of George W. Dodge has received $129.73, which, under the will, belongs to the children of Nathaniel.  The whole of this sum is claimed by the plaintiff.  One-half of it is claimed by the defendant.  And it is to determine the rights of the respective parties thereto that this action is brought.

The language used in the will of George W. Dodge obviously means that the remainder, after the death of their father, is to go to the legitimate children of Nathaniel.  Therefore, if the defendant is such

legitimate child, he is entitled to a half of the $129.73 claimed by him. Otherwise the whole sum belongs to the plaintiff. Whether the defendant is legitimate or not depends upon the validity of the Dakota decree of divorce obtained by his father against Frances Utter Dodge.

In Callahan v. Callahan, 65 Misc. Rep. 172,[1] I have discussed the rule with regard to foreign divorces now in force in this state, in view of the decisions in Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, and Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867. I have there held that the rule formerly prevailing in New York is unaltered by these decisions, except in one respect —that, where the foreign state in which the decree had been obtained was the matrimonial domicile of the parties, then, even if the defendant is a resident of this state and had only been served by publication, the decree must be held valid here.

The result is that, in determining the validity of a foreign decree of divorce obtained without personal service or appearance against a defendant residing here, three elements are to be considered: (1) The domicile of the plaintiff; (2) the domicile of the defendant; and (3) the matrimonial domicile. If the plaintiff only is domiciled in the state where the decree is granted, then it will not be recognized here. If the plaintiff and the defendant are both domiciled there, the decree is valid even if the defendant may be actually present here. If the plaintiff is domiciled there, and the matrimonial domicile is there also, the decree is valid, even though the defendant resides here.

In the case at bar it is not disputed but that Nathaniel Dodge was domiciled in Dakota. It is equally undisputed that there was no matrimonial domicile in that territory, and that his wife was actually present in this state at the time the decree was granted. The only theory, therefore, on which the decree can be sustained is that Frances Utter Dodge, while in fact present here, was domiciled in Dakota. She was domiciled there if, as a matter of law, her domicile follows that of the husband.

It has been said by a distinguished judge in this state that the old rule in reference to a married woman's domicile following that of the husband no longer prevails, in view of the rights which are recognized to be hers by statute; that the property relations between husband and wife have been entirely changed since the rule in question has obtained, and the reasons for the rule no longer exist. Matter of Florance, 54 Hun, 328, 7 N. Y. Supp. 578. It is true that this statement was made in a case where it appeared that the husband and the wife had agreed to live separate, and where the wife, by the husband's consent, had acquired a domicile apart from his own. Yet the language used seems to be supported in its broadest sense by at least one opinion in the Court of Appeals. In O'Dea v. O'Dea, 101 N. Y. 23, 4 N. E. 110, the plaintiff and the defendant were married in Lewiston in this state. She later left him and went to Toronto, and he removed to and became a resident of the state of Ohio. He there, in accordance with the laws of that state, obtained a decree of absolute divorce. Although, as is pointed out in the dissenting opinion, there is nothing to show the circumstances under which the separation occurred and, therefore, under the old rule her domicile followed that of her husband, yet it

[1] 121 N. Y. Supp. 39.

was held that the Ohio decree was void. A similar result, under similar circumstances, was reached in McGiffert v. McGiffert, 31 Barb. 69.

In view, however, of other decisions in this state and in the United States Supreme Court, I think that the old rule must still be held to prevail, modified, however, by certain exceptions. The domicile of the husband is still the domicile of the wife, except in cases where she is living apart from him under a decree of separation, or where his conduct is such as to entitle her to a limited or absolute divorce, or where an agreement exists between them permitting her to live apart from him and to select her own domicile, or except in a very limited class of instances where his conduct is unreasonable. Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; Gray v. Gray, 143 N. Y. 354, 38 N. E. 301; Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867.

Therefore, where a husband, in a foreign state, obtains a decree of divorce in accordance with the laws of that state, even if the wife be present here, does not appear in the action and is only served by publication, that decree is valid here in the absence of evidence showing that she has acquired a domicile other than that of her husband. In the absence of such evidence, her domicile will be presumed to be his; and, if so, the court granting the decree obtained jurisdiction over her.

Such is said to be the situation in the case at bar. But I think such claim is a mistaken one. Mrs. Dodge testifies that she and her husband Nathaniel lived in the town of Augusta until November, 1883, and that then they "separated—parted." Later she testified that she went to New York City "after the separation from Mr. Dodge."

The use of the word "separate" fairly implies an agreement between the parties; not an abandonment by the one of the other. It implies a consent on the husband's part that the wife shall acquire a separate domicile. This view is strengthened by the affidavit of Mr. Dodge contained in the judgment roll upon which the order of publication was obtained that his wife is not a resident of Dakota, but resides in the city of New York; and by the order itself to the same effect.

"Domicile" and "residence" are not convertible terms. The former has the more extensive meaning, and includes, beyond mere physical presence at the particular locality, positive or presumptive proof of an intention to constitute it a permanent abiding place. Therefore, the statement that at the time the affidavit was verified Mrs. Dodge resided in New York is not entirely inconsistent with the claim that her domicile was in Dakota. Yet the place of residence is prima facie that of domicile. Kennedy v. Ryall, 67 N. Y. 379.

I am, therefore, of the opinion that the evidence, though slight, requires the holding that, at the time Nathaniel Dodge began his action and obtained his decree of divorce in Dakota, his wife was domiciled in this state. That being so, the decree was void, and the marriage to Agnes Cleary was without validity.

The necessary consequence is that the plaintiff is entitled to judgment for the relief demanded in the complaint.

Judgment for plaintiff.