Susan Fisher and Another, Respondents, *v.* Albert A. Fisher, Appellant, Impleaded with Gertrude Brady and Others, Respondents.

Fourth Department, November 13, 1929.

*Omar G. Olds*, for the appellant.

*Klocke & Rovner*, for the plaintiffs, respondents.

*Saperston, McNaughtan & Saperston*, for the respondents Liberty Bank of Buffalo and others, as executors.

*Harry H. Wiltse*, for Genevieve P. Fisher, as general guardian, and individually.

*Eugene L. Klocke*, general guardian, respondent, in person.

*Frederick F. Grotz*, special guardian, respondent, in person and guardian *ad litem*.

*Daniel N. McNaughtan*, of counsel for said respondents.

*Arthur A. Ward*, special guardian in person and guardian *ad litem*.

CROSBY, J. Joseph E. Fisher, the testator, died August 11, 1929, leaving a will in which he named defendant Liberty Bank of Buffalo and defendant Albert A. Fisher as executors, and said Albert A. Fisher as trustee of certain trusts. Testator left him surviving defendant Genevieve P. Fisher, his widow, and six children. Two of said children, Susan Fisher and Martin Fisher, are adults and are the plaintiffs in this action; two, Gertrude Fisher (now Brady) and Joseph Fisher, are infants over fourteen years of age, and two, John Fisher and Edward Fisher, are infants under fourteen years of age. There were no grandchildren of testator in being at the time of his death, although, in one place, the record seems to indicate that Gertrude Fisher Brady's infant son was born before testator died. The fact is that testator's six children above named were his only descendants at the time of his death.

The executors offered the will for probate in Surrogate's Court and special guardians were appointed to represent the infant children. The present plaintiffs and the special guardians of testator's infant children filed objections to the probate of the will. The contest over the probate of the will was referred to the Supreme Court to try upon appropriate framed issues.

At this point all the parties in being who had any interest in the will of testator, or in his estate, invoked the provisions of section 73 of the Real Property Law (as added by Laws of 1919, chap. 441) and of section 24 of the Personal Property Law (as added by Laws of 1919, chap. 419) as a means of settling the controversy over the probate of the will.* A guardian was appointed to represent the contingent future interests of any issue of testator's children that might hereafter be born. The executors, the trustee, the widow, the adult

---

* See Decedent Estate Law, § 19, as added by Laws of 1929, chap. 229, effective Sept. 1, 1930. See, also, Laws of 1929, chap. 229, §§ 15, 19, 21.— [REP.

children, the guardians of the infant children and the guardian of grandchildren yet to be born, all joined in an agreement which provided, among other things, " that the trusts set forth in the third clause [of the will] * * * be waived by all the parties hereto and declared null and void and of no effect whatsoever," and then proceeded to a division of the estate among the widow and children to the exclusion of the contingent remainders of possible unborn grandchildren. The surrogate approved the agreement; no appeal has been taken from the surrogate's order of approval, and the present action is brought to enforce specific performance of the agreement.

The part of the will that is pertinent to our present inquiry is the clause marked " Third." It gives the bulk of the estate to testator's brother Albert A. Fisher, in trust, however, with directions to set up one-fourth of the estate as a trust fund for the widow, she to have the income for life, the corpus to be added, in equal shares, to the six trusts created for the respective children, at the widow's death. Then follows these three paragraphs, being the last three paragraphs of clause " Third " of the will. I will hereafter, for the sake of brevity, in referring to them, speak of these three paragraphs as A, B and C respectively:

A. " The remaining three-fourths of said principal or corpus shall be divided into equal parts or shares and one part or share shall be set up in a separate trust by my said trustee for each child and issue of deceased children of mine surviving, *per stirpes* and not *per capita*, the income therefrom to be paid in quarterly installments to the said child or in equal shares to the issue of said deceased child of mine until the expiration of each respective trust."

B. " The principal sums of the several trusts set up for my children living at my death shall be paid to each child respectively when said child becomes forty-five years of age, or in case the said child dies before reaching the age of forty-five years, said corpus to be held in trust until the youngest issue of said child in being at my death becomes thirty years of age or sooner dies, in either of which events the corpus of said trust shall go to the heirs of my said child."

C. " In case of a child who has predeceased me, the trust for the issue of said child shall terminate when the youngest issue of said child in being at my death becomes thirty years of age or sooner dies, in either of which events the corpus of said trust shall go to the heirs of my said child."

If, from this language, it clearly appears that the unborn grandchildren of testator have no colorable interest in testator's estate by the terms of the will, then no one has been injured by the so-called compromise agreement, the same was valid and this court should enforce its performance. If, however, such unborn

grandchildren have a contingent remainder depending upon their being born and depending also upon the death of their respective parents before reaching the age of forty-five years, then it is doubtful if a court of equity ought to enforce an agreement which, under the guise of a compromise, confiscates the property of the unborn to satisfy the demands of those who enjoy the advantage of being here to urge their demands upon the court. And this is so, even though the surrogate's order is here subject only to collateral attack. Our Court of Appeals, in speaking of the duty of the courts of our State to give full faith and credit to the judgment of courts of a sister State, said: " Or if the judgment has been procured by fraud upon the legal rights of the party against whom it is rendered, it may be questioned collaterally for that reason in the courts of this State." (*Hunt* v. *Hunt*, 72 N. Y. 217, 225.) This court of equity owes no higher duty to respect decrees of the Surrogate's Court than it owes to respect the decrees of the courts of other States, for the latter duty is imposed upon us by our Federal Constitution (Art. 4, § 1). And while no fraud in fact was intended to be committed, if the Surrogate's Court was used as an instrument for confiscation of the property of contingent remaindermen it amounts to a fraud in law, and this equity court owes no duty to lend itself to the consummation of the injustice perpetrated.

That brings us to the question whether the unborn grandchildren of testator had a contingent remainder under the will. There can be little doubt of it, notwithstanding the somewhat confused wording of the will. Paragraph A, above quoted, provides generally for the setting up of a trust for each of testator's six children. It may be doubtful what is meant by the words " trust * * * for each child and issue of deceased children of mine surviving," but it seems to me to mean, for each child who survives me, and for the issue of such of my children as survive me and die subsequently to my death. Later, and in drafting paragraph C, above quoted, testator seems to have realized that he had not provided for the contingency of some of his children predeceasing him (a contingency which did not happen as a matter of fact); therefore, he provided for that contingency by making the same provision for grandchildren that was made for them in paragraph B, above quoted, in case testator's children did not come into the fee of their respective shares by outliving the period of suspension, which was until each respective child reached the age of forty-five years. Testator's intent is at least clear, that, in some contingency, his grandchildren should have his estate, for they are mentioned in both paragraph A, which relates to income, and in paragraph B, which relates to corpus of the respective trusts.

Paragraph B, above quoted, contains the directions for the administration of the several trusts. One thing here is clear. Testator made it emphatic that he did not wish the fee to become vested in possession of his children unless and until they arrived respectively at the age of forty-five years. If any child died before reaching that age testator wished the vesting of the remainder in fee to be suspended for a further period to be measured by thirty years of the life of the youngest child of that child. It is here seen that testator is consistent in his notion that it is not good for his descendants to come into possession of their property until they reach years of maturity. When the youngest grandchild becomes thirty the others will be somewhat older. But, at this point, testator found himself confronted with the statute which provides that any period of suspension of the absolute power of alienation must be measured by lives in being. (See Real Prop. Law, § 42; Pers. Prop. Law, § 11.)* This, of course, does not mean that a gift may not be made to persons not in being, contingent upon their coming into being, but means that the period of suspension must be measured by the lives of persons in being at the time of the gift. Therefore, in paragraph B testator provided that if a child died without reaching the age of forty-five, the further suspension should be, as was necessary, measured by thirty years of the life of the youngest grandchild (issue of that particular child of testator) who was in being at testator's death. But, in fact, there were no grandchildren of testator in being at his death. The result of that is only a failure of any period of suspension beyond the one that relates to the life of the first life tenant (testator's child), and the remainder vests immediately in the heirs of any child upon such child's dying younger than forty-five. As to any child who lives to be forty-five his life estate ripens into a fee.

It is not overlooked that, in paragraph B, testator, in providing for the second period of suspension, has made provision for only two of three possible contingencies, and the one not provided for is the one that actually happened. He provided that the second period of suspension should terminate (1) when the youngest grandchild in being at his death should reach the age of thirty years, or (2) when such grandchild should sooner die. But he did not provide for the second period of suspension in the event of there being no grandchildren in being at his death. But, as hereinbefore noted, that merely results in a failure of any further period of suspension of the absolute ownership beyond the life of the first life tenant, testator's child. The existence of grandchildren in being at testator's death was not a condition of the gift to them. When speaking

---

* See Laws of 1929, chap. 229, §§ 16, 18, 21.— [REP.

of grandchildren, the language of the will, " in being at my death," is a phrase of limitation, not a condition of their gift. (*Matter of Kenny*, 224 App. Div. 152; affd. on opinion below in 250 N. Y. 594.)

The conclusion, therefore, is reached that unborn grandchildren of testator are contingent remaindermen of the several trusts created by his will. If any child of testator dies before reaching the age of forty-five his children take their parents' share, to have the use until the youngest reaches thirty years of age and then the corpus. The interests of these grandchildren have been, not compromised, but confiscated. Do section 24 of the Personal Property Law and section 73 of the Real Property Law warrant such action? The appellant urges that those sections are unconstitutional in that they authorize the taking of property without due process of law. (See U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.) Those sections do no such thing. They merely authorize the courts to bring before them unknown parties and unborn parties, to appoint guardians for them and to deal with their interests as fully and freely as they could deal with the interests and properties of infants or incompetent persons and the language of those sections clearly implies that the interests of unborn persons shall be secured and protected. " In the event that by the terms of any compromise made pursuant to this section money or property is directed to be set apart or held for the benefit of or to represent the interest of * * * persons unknown or unborn, the same may in a proper case be paid or deposited in court and remain subject to the order of the court."

Since the right to make a will is not a natural but a purely statutory right, the Legislature might provide that no contingent remainders could be created by will. But the sections referred to have not done that. They have not even provided that contingent remainders created by will can be destroyed, abandoned or confiscated. The sections (in subdivision e) both provide that the proposed compromise agreement shall be approved by the court only, " if found by the court to be just and reasonable in its effects upon the interests in said estate or property of * * * unknown persons or the future contingent interests of persons not in being." If life tenants can, by merely staging a contest over the probate of a will, enlarge their life tenancies into fees at the expense of contingent remaindermen, then it will no longer be possible for a man with profligate children to provide for their best interest by giving them life estates in trusts with remainders over to their children. In fact it will no longer be possible to make a will at all with any assurance that its provisions will be carried out. It is a matter of deep public concern that these new sections of the Real Property

Law and the Personal Property Law be correctly understood. The Surrogate's Court is peculiarly well fitted for looking after the interests of infants, incompetents and unborn children. The sections in question give that court tremendous powers over those interests. But those sections do not authorize total devastation of the property of those who cannot be heard at the behest of those who are here to importune. Property should be set aside to respond to the call of contingent remaindermen, should they ever come into being, or security taken to protect them. In this case no one, not even the guardians of the unborn, made any effort in their behalf. The appellant himself, the trustee under the will, was a party to the contract of so-called compromise; he bought the property of the estate; he refused to take it and prosecutes this appeal from a decree to compel specific performance, only because he wants this court to certify to the marketability of his title. He was not even represented upon the argument of this appeal. His brief and that of the guardian for the unborn merely make a perfunctory submission of the rights of the parties to this court.

The only argument to justify the kind of an agreement that was made here is this — that a *bona fide* contest was pending, that expensive litigation would ensue, that costs usually come largely out of the estate, that the interests of the unborn were contingent and somewhat remote, and that it would be better for the contingent remaindermen to let their parents have the estate absolutely, and free from the devastating effect of long litigation, in the reasonable hope that they had a prospect of inheriting some of the property from their parents who secured it under the compromise. I would not say there could not arise a situation in which that argument would prevail. But in this case it would seem that everybody, so far, has taken it for granted that the law referred to was a signal for a general slaughter of all contingent remainders, and no thought seems to have been given by anybody looking to their protection. This is an equity action, and equity should not lend its power to compel specific performance of a contract that grew out of such a mistaken understanding of the law, and resulted so disastrously to those whose interest it was the duty of the court to protect.

The judgment appealed from should be reversed and the complaint dismissed.

All concur, SEARS, P. J., and CROUCH, J., in result only. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law reversed and new findings and conclusions made.