HELEN J. GLASER, Appellant, *v.* WALTER T. GLASER, Respondent.

Argued November 29, 1937; decided January 11, 1938.

*William J. Dawley* and *J. Gibson Fruin* for appellant. The marital relation is integrated with the public policy of the State. (*Fearon* v. *Treanor*, 272 N. Y. 268; *Hanfgarn* v. *Mark*, 274 N. Y. 22; *Wade* v. *Kalbfleisch*, 58

N. Y. 282; *Maynard* v. *Hill,* 125 U. S. 190; *Parker* v. *Parker,* 222 Fed. Rep. 186; *Hubbard* v. *Hubbard,* 228 N. Y. 81.) The marital relation constitutes an institution or status, and is a *res,* which has a situs, and that situs[k] is the matrimonial domicile; and the power to dissolve the marital tie is confined to the courts of the matrimonial domicile. (*Haddock* v. *Haddock,* 201 U. S. 562; *Atherton* v. *Atherton,* 181 U. S. 155; *Cheever* v. *Wilson,* 9 Wall. 108; *Andrews* v. *Andrews,* 188 U. S. 14; *Lister* v. *Lister,* 86 N. J. Eq. 30; *Hubbard* v. *Hubbard,* 228 N. Y. 81.) The jurisdiction of the Nevada court to render the decree of divorce is open to inquiry. (*Andrews* v. *Andrews,* 188 U. S. 14; *Thompson* v. *Whitman,* 18 Wall. 457; *Rose* v. *Himely,* 4 Cranch, 241; *Burbank* v. *Ernst,* 232 U. S. 162; *Olmstead* v. *Olmstead,* 216 U. S. 386; *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265.) The Nevada court acquired no jurisdiction over the *res,* the marital status of the parties, which is the subject-matter of this action. (*Newburger* v. *American Surety Co.,* 242 N. Y. 134; *Hartigan* v. *Casualty Co.,* 227 N. Y. 175; *Fischer* v. *Fischer,* 254 N. Y. 463; *Lefferts* v. *Lefferts,* 263 N. Y. 131; *Stokes* v. *Stokes,* 198 N. Y. 301; *Elterman* v. *Hyman,* 192 N. Y. 113; *City of Buffalo* v. *D., L. & W. R. R. Co.,* 190 N. Y. 84; *Israel* v. *Manhattan Ry. Co.,* 158 N. Y. 624.) Plaintiff's alleged appearance in the Nevada action did not give the Nevada court jurisdiction to decree the divorce. (*Gray* v. *Gray,* 143 N. Y. 354.) Plaintiff's alleged appearance in the Nevada suit does not estop her from contesting the validity of the Nevada decree. (*Stevens* v. *Stevens,* 273 N. Y. 157; *Duval* v. *Wellman,* 124 N. Y. 156.)

*William D. Whitney, Frank W. Holmes* and *T. Roland Berner* for respondent. In cases in which the defendant appeared in the divorce action in the sister State the decree of the sister State is final and binding. (*Kinnier* v. *Kinnier,* 45 N. Y. 535; *Jones* v. *Jones,* 108 N. Y. 415; *Guggenheim* v. *Guggenheim,* 201 N. Y. 602; *Guggenheim*

v. *Wahl,* 203 N. Y. 390; *Tiedemann* v. *Tiedemann,* 225 N. Y. 709; 251 U. S. 536; *Pearson* v. *Pearson,* 230 N. Y. 141; *Borenstein* v. *Borenstein,* 272 N. Y. 407; *Strauss* v. *Strauss,* 122 App. Div. 729; *Stewart* v. *Stewart,* 198 App. Div. 337; *Richards* v. *Richards,* 87 Misc. Rep. 134; 167 App. Div. 922; *Rupp* v. *Rupp,* 156 App. Div. 389; *Scheinwald* v. *Scheinwald,* 231 App. Div. 757; *France* v. *France,* 79 App. Div. 291; *Matter of Pratt,* 233 App. Div. 200; 258 N. Y. 577.) The appellant is estopped to attack the Nevada decree. (*Starbuck* v. *Starbuck,* 173 N. Y. 503; *Hynes* v. *Title Guarantee & Trust Co.,* 273 N. Y. 612; *Kaufman* v. *Kaufman,* 177 App. Div. 162; *Scheinwald* v. *Scheinwald,* 231 App. Div. 757; *Schneider* v. *Schneider,* 232 App. Div. 71; *Matter of Pratt,* 233 App. Div. 200; 258 N. Y. 577; *Van Dover* v. *Van Dover,* 247 App. Div. 813; 271 N. Y. 667; *Jones* v. *Jones.* 108 N. Y. 415.)

CRANE, Ch. J. This is an action brought by a wife for a separation. The sole question presented here for determination is the validity of a Nevada divorce heretofore granted the husband.

The parties were married in the city of New York on August 29, 1935. Both parties had been residents of the State of New York, and after their marriage continued to reside there. In November, 1935, the husband left the State of New York and became a resident of the State of Nevada. There he commenced an action against plaintiff for a divorce, in accordance with the laws of Nevada.

On November 4, 1935, the plaintiff executed and acknowledged a power of attorney wherein she appointed Joseph P. Haller, of Reno, Nevada, her lawful attorney at law and in fact to represent her in the divorce action, with full power and authority to do all acts that may be exercised and done by an attorney. Thereafter the plaintiff appeared in the divorce action by Haller, as her attorney. A decree of the Second Judicial Court

of the State of Nevada, dated January 6, 1936, dissolved the marriage between plaintiff and defendant.

The plaintiff alleges in her complaint that the power of attorney was procured from her by fraud and false representations, that she never intended to execute such a document and did not intend to submit herself to the jurisdiction of the Nevada court either by appearance in person or through an attorney. She also alleges that defendant was not an actual and *bona fide* resident of the State of Nevada at the time he instituted the divorce, that he went there solely to procure the decree and never gave up his residence in the State of New York. These issues have been resolved by the courts below against the plaintiff. It has been found that defendant " duly became a resident of the State of Nevada," and that plaintiff executed the power of attorney voluntarily, understanding the contents and nature of the instrument, and without any false representations on the part of defendant. There is evidence to support these findings, and this court cannot interfere with them.

Plaintiff, however, raises further argument against recognition of this decree. The marriage was performed in this State, both parties were domiciled in this State, and after the decree was rendered the husband resumed his domicile here. Plaintiff charges that the main purpose of her husband in going to the foreign State was to procure the divorce, and she contends that a decree of divorce obtained under such circumstances is invalid, offends our public policy, and should not be recognized here. (Cf. *Andrews* v. *Andrews*, 188 U. S. 14.) No legislative enactment expressing such policy is pointed out as in the *Andrews* case. Plaintiff rests her argument upon the general policy of the State with respect to marriage and divorce, as interpreted by the courts. A sufficient answer to plaintiff's argument is that our courts have many times recognized such decrees as valid, and have never indicated in any way that any policy of this State was infringed.

In *Pearson* v. *Pearson* (230 N. Y. 141) the wife brought an action against her husband to recover the sums which she claimed she had expended out of her separate estate up to the commencement of the action. While the action was pending the husband had obtained a divorce in Nevada on the ground of extreme cruelty. The wife had appeared and defended that action. The substance of the defense here was that the plaintiff had been guilty of extreme cruelty and that defendant had been justified in leaving plaintiff and was relieved from the obligation of supporting her during their separation. This court held that the parties in the Nevada action had litigated the very question at issue in this action, and that the Nevada decree was conclusive on the rights of the parties.

In *Ansorge* v. *Armour* (267 N. Y. 492) an action was instituted by an attorney to recover for legal services rendered in a habeas corpus proceeding instituted for the purpose of obtaining the custody of a child from defendant. Defendant was the father of the child, and had custody pursuant to the terms of a decree of divorce made by a Nevada court. The habeas corpus proceedings were instigated by the wife, and this action was brought against the husband on the ground that the services rendered to the child were necessaries. The foreign divorce had been obtained by the wife upon the appearance of the husband. Referring to that decree this court said: " The Nevada court, having jurisdiction of the action and of the parties, gave the custody of the offspring to the father during the week and to the mother over the week-ends. This decree is, therefore, entitled to full faith and credit in every State in the Union. The wife is bound by it, so is the husband; the courts here cannot review it or set aside its provisions in the absence of fraud; neither can any judge of this State change the custody of the child merely because he does not agree with the action of the Nevada court " (p. 498).

Only recently, in *Hess* v. *Hess* (276 N. Y. 486), we affirmed a judgment recovered in an action for money due under a decree of divorce rendered in the State of Nevada. The parties had been domiciled here, separated, and entered here into a separation agreement which fixed an allowance for the wife. The husband had appeared in the action in Nevada and filed an answer. The decree in that action provided alimony in accordance with the agreement which was recited. Having jurisdiction of the parties and the plaintiff being domiciled in Nevada according to its laws, the court declared the decree binding.

These decisions followed the law of this State, as decided in earlier cases. (*Tiedemann* v. *Tiedemann*, 225 N. Y. 709; *Guggenheim* v. *Wahl*, 203 N. Y. 390; *Jones* v. *Jones*, 108 N. Y. 415.)

By article VI, section 1, of the Federal Constitution, full faith and credit shall be given in each State to the judicial proceedings of every other State.

The cases in the United States Supreme Court cited in the brief of the appellant's counsel treat of facts which force the State courts under this section to recognize the decrees of a sister State. None of these cases, however, decide when and under what conditions a State may recognize a foreign decree, although it is not bound to do so under the Federal Constitution. These are matters of State policy over which the United States Supreme Court has no jurisdiction. What is the public policy of a State and where do we look to find it? The decisions of this court have given it a limited legal meaning, for in *People* v. *Hawkins* (157 N. Y. 1, at p. 12) this court said: " The term ' public policy ' is frequently used in a very vague, loose or inaccurate sense. The courts have often found it necessary to define its juridical meaning, and have held that a State can have no public policy except what is to be found in its constitution and laws. (*Vidal* v. *Girard's Exrs.*, 2 How. [U. S.] 127; *Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166; *Cross* v.

*U. S. T. Co.*, 131 N. Y. 343; *Dammert* v. *Osborn*, 140 N. Y. 40.) Therefore, when we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes or judicial records."

In *Andrews* v. *Andrews* (188 U. S. 14, p. 29) we find a reference to the public policy of Massachusetts regarding these foreign divorces as expressed in its statutes, which read as there quoted:

" ' Sec. 35. A divorce decreed in another State or country according to the laws thereof by a court having jurisdiction of the cause and of both the parties, shall be valid and effectual in this Commonwealth; but if an inhabitant of this Commonwealth goes into another State or country to obtain a divorce for a cause which occurred here, while the parties resided here, or for a cause which would not authorize a divorce by the laws of this Commonwealth, a divorce so obtained shall be of no force or effect in this Commonwealth.' 2 Rev. Laws Mass. 1902, ch. 152, p. 1357; Pub. Stat. 1882, c. 146, § 41."

We have no such statute in this State, and, as we have heretofore recognized these decrees of a sister State, as appears by the above decisions, we must affirm the judgment below, without costs.

The judgment should be affirmed, without costs.

O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; LEHMAN, J., concurs in result.

Judgment affirmed.