IDA CARBONE, Petitioner, *v.* THOMAS CARBONE, Respondent.

Domestic Relations Court of City of New York, Family Court Division, Bronx County, March 17, 1938.

*Sol Feder* [*Isidore Lapan* of counsel], for the petitioner.

*Sol Silver*, for the respondent.

PANKEN, J. The petitioner's action is based on the contract of marriage between herself and the respondent. The question to be determined is whether the respondent is answerable for the support and maintenance of the petitioner and her child by a former marriage. The respondent denies that he is legally liable either for the support of his alleged wife or his alleged stepchild.

Though the testimony in the case leaves no shadow of doubt as to the fact that the petitioner and respondent entered upon a marriage contract in the State of Connecticut and that the marriage had been consummated, it is the contention of the respondent that at the time he went to the State of Connecticut with his alleged wife, he had no capacity to enter upon that solemn contract of marriage; that, in fact, at that time he was legally married to another woman who is still living.

All parties to this proceeding are residents of the State of New York. The respondent has been such a resident within this jurisdiction for a period of approximately thirty-seven years. The petitioner was born here.

It appears from the evidence in the case that in 1914, some twenty-two years antedating the marriage between the parties before me, the respondent married one Violette Champoli and had by her two children who, as well as Violette Champoli, his first wife, are now living. The further facts as they affect the determination herein are as follows:

Spouse No. 1 had obtained a decree of divorce in the State of Morelos, in the Republic of Mexico, in or about the month of April, 1935. That decree allegedly dissolved the marriage between herself and the respondent. It is contended on behalf of the respondent that the decree issued out of the court in the Republic of Mexico has no validity and, therefore, has not severed the marriage relationship between himself and his first wife and, hence, in law he still is the husband of the first wife and, therefore, had no capacity to enter into a valid marriage contract with the petitioner herein.

The right of the petitioner for the support of herself and her child by a former marriage depends upon the establishment by her, by competent proof, of the existence of a marital relationship, that of husband and wife. It is upon the basis of that relationship that this court may take jurisdiction and by its order require, in a proper case, a spouse to support his wife and children.

When the validity of a marriage contract, as in this case is attacked as incident to the right to determine whether or not a party is entitled to receive support from her spouse, the Domestic Relations Court of the City of New York, has the power to inquire into the validity of the marriage contract.

This court has no power to entertain an application for a declaratory judgment, nor has this court the power to inquire into the validity of a divorce decree or a marriage contract, excepting as an incident to the power of this court to provide for a spouse. It is only in aid of a determination as to the rights of parties given them under the Domestic Relations Court Act that such inquiry can be made.

It is apparent that if no valid marriage relationship exists, an order by this court requiring respondent to contribute to the support of his wife would amount to the exercise of the powers of this court toward the furtherance of an unlawful act rather than in redress of a wrong done or the enforcement of a right flowing from a contractual relationship which in fact is non-existent.

The alleged divorce decree issued out of the court of the State of Morelos in the Republic of Mexico, in evidence, recites as follows:

" *Second.* That after the complaint was accepted in the form and way proposed, the defendant, Mr. Anthony Carbone was notified of same by a writ in a sealed, certified and with acknowledgment of receipt envelope sent to his place of residence, summoning him to answer during the time appointed by Law."

" *Third.* That having lapsed the time granted to the defendant to answer the divorce complaint instituted against him, without the card issued by the Post Office of this City having been returned, and having lapsed the period of two months, * * * default was entered against the defendant."

No proof was submitted to me showing that process had been served upon the respondent. There is testimony that he had received notice that an action had been instituted against him. He never appeared in that proceeding either personally or by counsel. The testimony is clear that he had not abandoned his residence in the State of New York and that he had never repaired to the Republic of Mexico.

Spouse No. 1 testified that she went to the city of Cuernavaca in Mexico during the winter of either 1934 or 1935 and resided there for a period of six months. These questions were asked of her by the corporation counsel: Q. You were sick and you resided continuously in Mexico? A. Yes, for six months. Q. Up to the time you obtained the divorce? A. Yes, I was sick. Q. You were sick and went to Mexico to recuperate, is that right? Then the court asked several questions and the witness said in answer to a court's question: Q. So, you went down there? A. Yes and stayed there six months with some friends.

It is evident that the respondent's first wife went to Mexico not to establish a residence or to take up residence there.

In the case of *Pignatelli* v. *Pignatelli* (N. Y. L. J. Jan. 13, 1938, p. 190) it was said: " Before a place of abode will be considered a person's ' domicile,' the person must actually reside there with the fixed intention of making it his permanent home. Both residence and intention are essential, and residence alone, no matter how long, can only be important as a ground from which to infer intention."

In another place Mr. Justice SHIENTAG says: " A domicile having been established, whether of origin or choice, it continues until a new domicile is acquired." Then further on the opinion reads: " Each case varies, and what may be of great weight in one may in another be so qualified as to be of little importance. In determining a person's intention to make a place his home consideration must be given." And recites many other factors.

The court in the case of *Pignatelli* v. *Pignatelli* (*supra*) finds: " Plaintiff failed to appear in the Nevada action, and the attempted service upon her by publication and mailing was insufficient under our law to give the Nevada courts jurisdiction over the action."

The facts in this case fall right within the law as laid down in the *Pignatelli* case and which findings are supported by innumerable cases on every point. (*De Meli* v. *De Meli*, 120 N. Y. 485; *Gould* v. *Gould*, 235 id. 14, and other cases.) ·

Spouse No. 1 did not go to Mexico for the purpose of instituting a divorce proceeding in so far as the proof submitted shows. She did not go to Mexico for the purpose of establishing in that Republic a permanent residence, Her domicile continued in the State of New York. If " A," because of ill health, tuberculosis or some other ailment, leaves the State of New York and goes to Mexico to be benefited by the climatic conditions in that State and to be returned to health, an intention to change domicile cannot from such facts be found. The proof shows that spouse No. 1 returned to New York shortly after the decree of divorce had been obtained and then entered into a marriage contract with someone else. The marriage ceremony between her and her second husband was performed in a foreign jurisdiction. Both subsequent marriages were not solemnized in the State of New York. In each instance, the parties went outside of the State for that purpose.

The question as to the validity of the Mexican decree must be determined. That which is null in law *ab initio* cannot be validated by the acts of individuals. That has been decided. That which is null is, in law, non-existent. It has no force; it has no effect; it will not be recognized. It is to be noted, however, that, in some States of the Union the marriage contract entered into by either spouse No. 1 or the respondent herein will be recognized to be lawful. That recognition is tantamount to a finding that the divorce decree obtained in Mexico was valid.

It is unfortunate that there is such great variability in the law affecting marriage and divorce in the several states of the Union. That cannot be changed by judicial decree. It cannot be changed by courts of original jurisdiction in face of determinations as to what the law is by the appellate courts.

It has been held in several cases in our State that the law of estoppel may be invoked against the person who had instituted a proceeding for a divorce and obtained a decree in such proceeding.

In *Starbuck* v. *Starbuck* (173 N. Y. 503, at p. 507) Judge HAIGHT quoted with approval from *Matter of Swales* (60 App. Div. 599; affd., 172 N. Y. 651) from the opinion of the Appellate Division as follows: "We think the case justifies the application of a * * * principle which is, that where a party has invoked the jurisdiction of any court and submitted himself thereto, he cannot thereafter be heard to question such jurisdiction." (*Van Dover* v. *Van Dover*, 247 App. Div. 813; *Stevens* v. *Stevens*, 248 id. 344; affd., 273 N. Y. 157.)

The Court of Appeals affirmed the determination by the Appellate Division in the case of *Brown* v. *Brown* (242 App. Div. 33). In that case the validity of the marriage was attacked by proof that a judgment of divorce previously obtained by himself in the court of a sister state was invalid for lack of jurisdiction and that his former wife being alive he, therefore, was incapable of entering into a valid marriage contract with the plaintiff. The court in that case said: "A party may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor. (*Starbuck* v. *Starbuck*, 173 N. Y. 503; *Kelsey* v. *Kelsey*, 204 App. Div. 116; affd., 237 N. Y. 520; *Matter of Swales*, 60 App. Div. 599.)" The court further says that "The plaintiff's allegations as to the marriage of plaintiff and defendant are not under the circumstances overcome by defendant's proof of the invalidity of the dissolution of a previous marriage of defendant with another woman now living. The plaintiff is entitled to judgment for the amount found owing under the terms of the contract by the trial justice."

In the case before me the respondent did not institute the proceeding that resulted in the alleged divorce decree.

The situation is unfortunate, indeed. Two innocent parties will be seriously harmed if the alleged divorce decree is not given full faith and credit. Spouse No. 1 accepted the Mexican decree as valid. Under *Starbuck* v. *Starbuck* (*supra*) and *Brown* v. *Brown* (*supra*) she cannot be heard in derogation of the decree which resulted from the proceeding instituted by her. The respondent acted as if he also accepted that decree as being valid. Can he be heard in derogation of the decree which he accepted. If spouse No. 1 is estopped because she regarded the decree as valid, should not the respondent be estopped if he too, regarded the decree as valid and acted thereon. The two innocent parties also accepted the decree as valid.

In *Glaser* v. *Glaser* (276 N. Y. 296) the chief judge sustains the court below on the following ground: "It has been found that defendant 'duly became a resident of the State of Nevada,' and that plaintiff executed the power of attorney voluntarily, understanding the contents and nature of the instrument, and without any false representations on the part of defendant. There is evidence to support these findings, and this court cannot interfere with them."

The difference in the facts in the case before me and the facts in the case of *Glaser* v. *Glaser* (*supra*) is that the plaintiff established a *bona fide* residence in the State of Nevada and the defendant appeared in the court of that State through a power of attorney executed by the defendant voluntarily. The facts in the case before me show that there was no appearance by the respondent who is the defendant in the Mexican proceeding and, moreover, there was no *bona fide* residence established by the plaintiff in that proceeding.

These are the facts in the case. The problem before me is: Is the marriage between petitioner and respondent to be sustained by the court after taking into consideration all of the facts and the law applicable.

The court is desirous of sustaining both marriages into which the respondent and his first wife entered.

It is axiomatic that before a court can bind parties to its decrees, it must first obtain jurisdiction of the persons to be charged. The court in the State of Morelos, Mexico, evidently has obtained jurisdiction of the plaintiff in that proceeding. Under the law of the State of New York no residence or domicile was established by the plaintiff in that case and, moreover, the defendant did not submit to the jurisdiction of the court either personally or by counsel.

In *Lefferts* v. *Lefferts* (263 N. Y. 131) the Court of Appeals held that in that case Mrs. Oppenheimer had taken an apartment of three rooms, kept house for herself and her children, sent her children to school, and voted in an election in the State of Nevada in 1916; the absolute divorce granted her upon the ground of cruelty and desertion in the State courts of Nevada was in fact void because there was no actual residence by Mrs. Oppenheimer in the State of Nevada and her husband did not submit to the jurisdiction of the courts of that State. The court said: "The suggestion having been made to the plaintiff that she go to Reno to get a divorce, the fact that, within a month after obtaining her decree, she returned to her mother in Brooklyn, together with the additional fact that, within a month after that, she made an affidavit that she was a resident of Brooklyn, sustains the inference drawn

by the Appellate Division that the wife went to Nevada with no intention of making it her permanent abode or changing her domicile."

The facts in the *Lefferts* case on the question of intent to establish a residence or to take up domicile in the State of Nevada were much stronger than the proof before me in this proceeding.

This court is bound by the construction of the law as laid down by the Court of Appeals, as is every other court in our State. It would appear that under the ruling laid down in the *Lefferts* case, the divorce decree obtained by spouse No. 1 is void. However, under the decision in the case of *Brown* v. *Brown* (242 App. Div. 33), affirmed by the Court of Appeals, if spouse No. 1 sought to relieve herself of the effect of the decree, she would not be heard. For the court in that case said: " A party may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor."

The logic of it is that one may not accept the benefits of his own acts and refuse to be bound by these acts if they no longer seem to him favorable. Certainly when another person is injured innocently because of the act procured, the court will not permit that person to be heard in impeachment of the results of his own act. It follows that where, for instance, spouse No. 1 seeking to impeach the decree or judgment of the Mexican court against her second husband, the court would disallow such action.

This case is distinguishable from the *Lefferts* case. In that case Lefferts married Mrs. Oppenheimer after she had obtained her decree of divorce. He could not disavow that decree of divorce. He was not a party to the action in which the decree was granted. The situation before me is otherwise. The respondent herein could have disavowed that decree. He could have regarded it as null and void and hence not binding upon him, but he chose to accept the decree and act thereon. He accepted the decree to be valid and because of the acceptance of the decree as valid, he entered upon the marriage contract with the petitioner.

I have been unable to find a case exactly in point in our jurisdiction. As far as my research has gone, I have not found a case in which the Appellate Division or the Court of Appeals has passed upon the state of facts such as exists in the proceeding before me.

To declare the marriage of the petitioner to the respondent void because of the nullity of the decree obtained by spouse No. 1 is to declare the marriage between the parties criminal, bigamous. At the same time, it would also, by inference at least, denominate the marriage between spouse No. 1 and her second husband of like character, criminal and bigamous.

The respondent, having by his own acts accepted the decree of divorce as valid and entered upon the marriage contract with the petitioner, public policy dictates a finding that the marriage is for all purposes valid. It is undoubtedly valid for the purpose of entering an order herein for the support of the petitioner and her child by a former marriage.

The temporary order hereinbefore made is made final.