Peck, J.
Plaintiff sues for a declaratory judgment that defendant is her husband and that a separation agreement and *309 decree of divorce entered in the State of Nevada in 1937, are invalid, and upon that declaration for a separation with increased alimony. Defendant successfully moved to dismiss the complaint under rule 107, subdivision 5, of the Rules of Civil Practice, on the ground that the Nevada decree is a final judgment determining the marital status of the parties. The papers on the motion show that the divorce action in Nevada was instituted by plaintiff, that defendant appeared therein, that plaintiff testified as to her residence in Nevada, and that the decree was based on a finding of the Nevada court that plaintiff was a bona fide resident of Nevada, in which place she had her only domicile.
Plaintiff now seeks to have the Nevada decree declared invalid upon allegations in her present complaint that she never became a resident of Nevada and that she was persuaded to institute the action there and to accept the terms of the separation agreement by false representations of the defendant that the amount provided for plaintiff’s support in the separation agreement was reasonable in view of defendant’s financial circumstances.
Under the decision in Schacht v. Schacht (295 N. Y. 439) plaintiff may not attack the separation agreement, incorporated in the Nevada decree, apart from an attack on the decree itself. The allegations of fraud here do not amount to an enticement into Nevada by fraud, coercion or duress which would warrant an attack upon the decree under the decision in Averbuck v. Averbuck (270 App. Div. 116). Therefore, this case squarely raises the question whether a party, who has invoked the jurisdiction of the Nevada court and obtained a divorce upon her oath of residence there and the personal appearance of the other party, may impeach that decree and assert its invalidity in the courts of this State on the ground that the Nevada court did not have jurisdiction to enter the decree because she was not a bona fide resident of Nevada.
This court, in Frost v. Frost (260 App. Div. 694) passed on the correlative question of the right of the other party to challenge the decree entered upon his personal appearance, saying: “ It [the Nevada court] had jurisdiction over the person of the plaintiff in that action (the defendant here) in consequence of the complaint which she had filed. It had jurisdiction over the defendant in that action (the plaintiff here) by his voluntary submission to its jurisdiction by an attorney authorized to appear for him. (Tatum v. Maloney, 226 App. Div. 62.) One of the issues which it was necessary *310 to determine in that action was the wife’s residence within ttie State, and that issue the Nevada court decided in her favor. The question of her residence could have been litigated by the husband had he desired to litigate it then. That he did not do. Not having done so, the determination is as conclusive upon him as the determination of any other issue of fact. (Hunt v. Hunt, 72 N. Y. 217; Pray v. Hegeman, 98 id. 351.) He may not now assert that the issue of residence was not correctly determined on account of an imposition practiced by the defendant on the Nevada court or on account of collusion of the parties. (Glaser v. Glaser, 276 N. Y. 296; Tiedemann v. Tiedemann, 225 id. 709.) The fraud of which he complains was fraud perpetrated on the Nevada court in respect to the very issue which was submitted for determination. Against fraud of that character courts of other States do not accord relief, even if it be assumed that relief is available at all. (Arcuri v. Arcuri, 265 N. Y. 358; Kinnier v. Kinnier [45 N. Y. 535], supra; Crouse v. McVickar, 207 N. Y. 213. See, also, Jacobowitz v. Herson, 268 id. 130.) ”
Obviously, if the decree is binding on the defendant in the divorce proceeding, it is binding on the plaintiff who instituted the action. The question here thus becomes whether, by virtue of subsequent decisions of the Court of Appeals or reconsideration of the problems involved, we should reach a different conclusion ■ from that reached in Frost v. Frost (260 App. Div. 694, supra). •'
No decision of the Court of Appeals has passed squarely on the issue. Krause v. Krause (282 N. Y. 355) held that a party who had procured a Nevada divorce, void because he at all times remained a resident of this State, was estopped from asserting the invalidity of that divorce in an action brought by his second wife for separation and support. Querze v. Querze (290 N. Y. 13) and Vose v. Vose (280 N. Y. 779) held that a Mexican mail-order decree of divorce had no effect upon the right of either spouse to a full adjudication in our courts upon the question of the existing marital status. Matter of Lindgren (293 N. Y. 18) held that a foreign decree of divorce, void, though entered upon the appearance of both parties, because neither was a domiciliary of the foreign State, was open to attack by a third party, being a child of the parties, although the parties to the decree themselves might not attack it.
Jurisdiction of a court to entertain a divorce action and render a binding decree therein must rest on a broader base *311 than jurisdiction over the person of the parties. A requisite is jurisdiction over the marital res, in which the State as well as the parties has an interest. The authority of a court to dissolve the marriage band, therefore, must rest upon the authority of the State over the marriage, requiring that at least one of the parties be a domiciliary of that State. (Williams v. North Carolina, 325 U. S. 226, 229.)
A decree of divorce entered by a court which does not have jurisdiction over the marital res, because neither party is a domiciliary of the State, is not valid, even though both parties have attended and submitted their persons to the jurisdiction of the court. Such a decree is not entitled to full faith and credit and is, therefore, subject to collateral attack in another State. (Andrews v. Andrews, 188 U. S. 14; Williams v. North Carolina, supra.) This does not mean, however, that a collateral attack must be entertained and may freely be made by the parties whenever it suits their convenience. Rather, the law is that whether or not the attack may be made depends upon the public policy of the home State in which the attack is sought to be made. (Andrews v. Andrews, supra.) The parties themselves have forfeited their say in the matter, but the interest of the State remains to be expressed at its will. It is for the State then to say whether and by whom an attack shall be permitted. The attack which was permitted by a party to the decree and sustained in Andrews v. Andrews (supra) was based upon the public policy of the State of Massachusetts, as expressed in its statute, that the commonwealth would not recognize divorces obtained by its inhabitants who go into another State to obtain a divorce for a 'cause which would not authorize a divorce by the laws of Massachusetts.
The question becomes, therefore, what is the public policy of the State of New York? That has been stated by the Court of Appeals in Glaser v. Glaser (276 N. Y. 296) where it was said that we do not have the same policy as Massachusetts and that our courts have many times recognized such decrees as valid and have never indicated in any way that our policy was infringed. (See, also, Matter of Rhinelander, 290 N. Y. 31, 36.)
It is not for us to re-examine that policy, but we may appropriately note the considerations we understand to dictate it. The State has a wholesome interest in the maintenance of marriages, but divorce is permitted, and, when decreed by a court satisfying by its record all the requisities of jurisdiction and due process, is recognized. Where one of the facts which must *312 be determined by that court, as an essential to its finding of jurisdiction, is that at least one of the parties is a domiciliary of that State, and that fact has been so determined on the appearance of both parties, presumptively the finding is correct and this State will accept it. Where persons having no complicity in the divorce proceedings have legitimate interests in a determination of the validity of the divorce, they may arouse the State’s interest and institute an inquiry, which our courts will entertain, to ascertain the validity of a divorce decreed by a foreign State as to persons alleged to have been at the time residents of this State. (Matter of Lindgren, 293 N. Y. 18, supra; Urquhart v. Urquhart, 272 App. Div. 60.) But the State has no interest in serving the vagaries of those who would play fast and loose with the marriage relationship, swearing to a residence in one State for the purpose of obtaining a divorce, and at some later time willing and anxious to impeach their oath for some further private purpose. They do not come chastened in spirit seeking restoration of the relationship so favored by the State. They come for relief from their obligations or for other personal gain. In Krause v. Krause (282 N. Y. 355, supra) the object of invalidating the divorce was to avoid the obligations of support undertaken towards a second wife. In the present case, the attack made on the divorce, nine years after the decree, seeks re-establishment of the marriage relationship only for the purpose of obtaining a separation with larger alimony payments. Society’s interest in the maintenance of marriage is not served by indulging such attacks. It is no necessary concomitant of a public policy against stipulating for divorce that those who have virtually succeeded in doing so be accommodated by our courts whenever it suits their convenience to retract. They do not have a call on that public policy as an escape from its violation. Bather, like being in pari' delicto, the law leaves them where it finds them.
It is argued from Querze v. Querze (290 N. Y. 13, supra) that the Court of Appeals has held that it is always open to parties to challenge the validity of a foreign decree of divorce and to have a full adjudication in our courts upon the question of the existing marital relationship. We think that the decision in Querze v. Querze (supra) rested and was intended to rest upon the factual situation there presented of a mail order decree of a foreign country where neither party had even a colorable residence and where the invalidity of the decree was patent on its face. So plainly is the mail order divorce a device for avoiding the law of New York and violating our statute and policy against stipu *313 lating for divorce, that our courts may and should strike down the pretensions of such a divorce as sham. On the other hand, when the court of a sister State, pursuant to due process, enters a decree upon a finding and adjudication of actual residence of one party and the personal appearance of the other, it is entitled to different consideration. Here at least is a presumption of validity as against the obvious invalidity of the mail order decree. Here the defect, if it exists, is latent and may be uncovered only by a trial at which the suitor is permitted to impeach his equally splemn act in another forum and take advantage of his confessed fraud upon another court.
As stated by the Supreme Court in Williams v. North Carolina (325 U. S. 226, 233, supra): “ The fact that the Nevada court found that they were domiciled there is entitled to respect, and more. The burden of undermining the verity which the Neyada decrees import rests heavily upon the assailant.”
It is this quality of regularity and presumptive authority attaching to the Nevada decree — an actual adjudication of jurisdiction upon competent evidence — as distinguished from the patent irregularity and lack of authority of a mail order decree, which warrants our State policy of treating the Nevada decree as conclusive between the parties. (Krause v. Krause, 282 N. Y. 355, 359, supra.) This policy is neither a validation of the decree nor abandonment of the State’s interest and authority in the marital res. The authority of the State remains to adjudicate upon the marital status whenever its social interest is aroused. That authority is amply affirmed and vindicated by the rule that third parties may at all times challenge the decree. (Matter of Lindgren, 293 N. Y. 18, supra; Urquhart v. Urquhart, 272 App. Div. 60, supra.) The infirmity in the decree remains constant and its vulnerability to the attack of third parties is sufficient protection of society’s interest. It is not necessary to go further and hold that the parties themselves may impeach the decree whenever it suits their purpose.
The policy of allowing attack by third parties and disallowing attack by the parties themselves is both logical and reasonable. Its reasonableness is self-evident. Its logic may be questioned by the argument that a decree of divorce operates in rem and therefore must be wholly good or wholly bad, binding on all or binding on none. The answer to this argument was given by the Supreme Court in the Williams case (325 U. S. 226, 232, supra): “ Although it is now settled that a suit for divorce is not an ordinary adversary proceeding, it does not *314 promote analysis, as was recently pointed out, to label divorce proceedings as actions in rem. Williams v. North Carolina [317 U. S. 287], supra, at 297. But insofar as a divorce decree partakes of some of the characteristics of a decree in rem, it is misleading to say that all the world is party to a proceeding in rem. See Brigham v. Fayerweather, 140 Mass. 411, 413, 5 N. E. 265, quoted in Tilt v. Kelsey, [207 U. S. 43], supra, at 52. All the world is not party to a divorce proceeding. ’ ’
And, further, as to the grounds of distinction between an attack upon the decree by the parties thereto and an attack by third persons not party to the divorce proceedings, the Supreme Court said (p. 230): “ It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties. Forsyth v. Hammond, 166 U. S. 506, 517; Chicago Life Ins. Co. v. Cherry, 244 U. S. 25, 30; Davis v. Davis [305 U. S. 32], supra. But those not parties to a litigation ought not to be foreclosed by the interested actions of others; especially not a Stat.e which' is concerned with the vindication of its own social policy * # * J9
A divorce decree which does not rest on the solid foundation of the court’s jurisdiction over the marital res, in the form of the bona fide residence of at least one party to the marriage within the jurisdiction of the court, is not binding on the world. If it rests on what purports to be the actual residence of one party, however, and personal appearance of the other, and a finding of jurisdiction by a court of apparent authority, the decree is binding on the parties personally. We so held in Frost v. Frost (260 App. Div. 694, supra) and re-examination of the law to date and consideration of public policy lead us to a reaffirmation of that decision.
The order and the judgment should be affirmed, with costs to respondent.