Dore, J.
(dissenting). Plaintiff sues for a declaratory judgment determining the marital status of the parties and declaring void a Nevada divorce decree and a separation agreement incorporated therein. Plaintiff alleges that at all times both parties and their children were residents of the State of New York. Plaintiff attacks the Nevada divorce decree on the ground that the court did not have jurisdiction of the subject matter of the action in that neither party was a bona fide resi *315 dent of Nevada when the decree was procured and entered. Plaintiff attacks the separation agreement on the ground that it was induced by fraud and was part of a collusive arrangement to dissolve the marriage.
On defendant’s motions under subdivision 5 of rule 106 of the Buies of Civil Practice (insufficiency), and subdivision 5 of rule 107 of the Buies of Civil Practice (an existing final decree of a court of competent jurisdiction determining on the merits the same cause of action), the court dismissed the complaint under rule 107.
The basic issue on appeal is the question of jurisdiction by the Nevada court of the subject matter of the action. On this issue, the majority opinion frankly concedes that a divorce decree by a court which does not have jurisdiction over the marital res because neither party is a domicilary of the State where the decree is made ‘ is not valid, even though both parties have attended and submitted their persons to the jurisdiction of the court ’ ’; and that such decree is not entitled to full faith and credit but is subject to collateral attack in another State. The opinion then declares in effect that the public policy of the State in connection with the marital res is in effect eclectic in that the State will pick and choose the persons in whose favor it will enforce its public policy and will not serve ££ the vagaries of those who would play fast and loose with the marriage relationship ” and who ££ do not come chastened in spirit seeking restoration of the relationship so favored by the State.” The majority then decide that this plaintiff seeks re-establishment of the relationship ££ only for the .purpose of obtaining a separation with larger alimony payments.”
But on the motion under rule 106, we must assume that all of plaintiff’s allegations are true. Of course, they do not support any such conclusion but expressly negative it. On the motion under rule 107, defendant’s affidavit, as he himself swears, “ consisted solely of formal statements relating to the complaint and proceedings in the Nevada Court ”. Defendant refused to debate the bona fides of plaintiff’s present claim including her sworn statement that neither of the parties has remarried and that as a matter of fact shortly before the instant action was instituted a reconciliation between them was almost effected. On such record without a trial, it is obvious that we cannot assume the action is brought in bad faith. On the contrary we are required to assume it was instituted in good faith to determine the marital status of the parties.
*316 It is settled that parties cannot by consent confer on any court jurisdiction of the subject matter of an action where the factual basis for such jurisdiction does not exist (Robinson v. Oceanic Steam Nav. Co., 112 N.. Y. 315). That rule is applicable in matrimonial cases where the issue concerns not a private right of one of the parties but a public right, in this case the existing marital status of the parties, a relationship involving public policy in which the State has a vital interest as it concerns the stability of the family, the basic unit of society.
The power of any court to grant a divorce rests ultimately on jurisdiction of the subject matter of the action. In turn that depends on the domicile, in the State granting the decree, of at least one of the parties; mere appearance without domicile does not confer jurisdiction (Williams v. North Carolina, 325 U. S. 226; Andrews v. Andrews, 188 U. S. 14; Matter of Lindgren, 293 N. Y. 18; Querze v. Querze, 290 N. Y. 13; Solotoff v. Solotoff, 269 App. Div. 677).
In the Williams case the court said at page 229: “ ‘ It is too late now to deny the right collaterally to impeach a decree of divorce made in another State, by proof that the court had no jurisdiction, even when the record purports to show jurisdiction .. .’ It was ‘ too late ’ more than forty years ago. German Savings Society v. Dormitser, 192 U. S. 125, 128.
“ Under our system of law, judicial power to grant a divorce — jurisdiction, strictly. speaking — is founded on domicil. Bell v. Bell, 181 U. S. 175; Andrews v. Andrews, 188 U. S. 14. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it.”
If plaintiff’s allegations are true (and that must be assumed on the motion under rule 106, and can not factually be determined without trial under rule 107), neither party was a bona fide resident or domiciled in Nevada at the time of the divorce decree. Accordingly the fundamental basis of jurisdiction of the subject matter was absent.
The public policy of this State is clearly expressed in section 51 of the Domestic Relations Law: “ * * * a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife.”
Plaintiff’s prior acts may estop her from disclaiming the Nevada court’s jurisdiction of her person or of any of plaintiff’s private rights. But unless we abandon the public policy *317 of the State expressly embodied in our statutes such action cannot be made a bar and will have no effect upon the right of either spouse to “ a full adjudication in our courts upon the question of the existing marital status As was said in Querze v. Querze (290 N. Y. 13,17, supra): “ This court has held that a void foreign divorce decree will preclude the spouse who obtains it from asserting in our courts a private claim or demand arising out of the marriage (Starbuck v. Starbuck, 173 N. Y. 503; Hynes v. Title Guarantee & Trust Co., 273 N. Y. 612). But we have consistently held that such a decree will have no effect upon the right of either spouse to a full adjudication in our courts upon the question of the existing marital status (Stevens v. Stevens, 273 N. Y. 157; Davis v. Davis, 279 N. Y. 657; Vose v. Vose [280 N. Y. 779], supra; Maloney v. Maloney, 288 N. Y. 532). * * *
“ The rule against collateral attack has no application here. The parties by themselves were without power permanently to fix or to alter their marital status or the scope of the obligations arising from the marriage relationship by consent, stipulation or their own conduct (Stevens v. Stevens, 273 N. Y. 157, 159; Goldman v. Goldman, 282 N. Y. 296, 299).”
The Qtieme case involved a so-called “ mail order ” Mexican decree. But insofar as jurisdiction of the subject matter is concerned, a Mexican “ mail order ” decree differs not in kind but only in degree from a Nevada divorce in which jurisdiction of the subject matter is factually absent when the parties appear not to establish a bona fide residence or domicile but solely in furtherance of arrangements to dissolve the marriage by agreement.
This record also presents an issue of fraud in that plaintiff alleges that the representations made with respect to defendant’s financial circumstances were false and untrue and part of a collusive arrangement to dissolve the marriage and by such fraud the separation agreement was incorporated in the decree.
Frost v. Frost (260 App. Div. 694) was decided in December, 1940, before the decision in the second Williams case (325 U. S. 226).
In Glaser v. Glaser (276 N. Y. 296, 299) it was found as a fact that the defendant husband, “ duly became a resident of the State of Nevada ”. The Court of Appeals held there was evidence to support such finding and that court could not interfere with it. In this case that finding has not as yet been factually established and on this record we cannot assume it.
*318 In Stevens v. Stevens (273 N. Y. 157, 158, supra) the Court of Appeals held that a husband who had procured a Nevada divorce in which the court was without jurisdiction was not prevented from maintaining a divorce action here, the court stating: “ Our conclusion is that the award of the Nevada decree to the husband should have no effect upon the right of either party to a full adjudication in this action upon the conceded fact of their existing marital status. ’ ’
In Krause v. Krause (282 N. Y. 355, 360) the issue was presented on undisputed facts in defendant’s defense to an action brought by his second “ wife ” for support and separation; the pleadings showed that defendant’s sole purpose was to disclaim any legal responsibility to support the plaintiff by reason of a void Nevada divorce the defendant husband has procured; and the court held it was not open to defendant to avoid such responsibility which he had voluntarily incurred. Significantly, however, the court added: “ Nothing in this decision should be taken to mean that because the defendant may not in these proceedings avail himself of the invalidity of his Nevada decree he is not the husband of his first wife. ’ ’
In. this case the facts are in dispute and cannot be determined without trial; eoneededly here there was no remarriage by either party; and the very purpose of this action is to declare the marital status.
The State’s public policy as to the subject matter of a matrimonial action is not enforced as a favor to individuals depending upon their particular conduct. On the contrary its enforcement is in the public interest and for the welfare of the State itself. Public policy is the interest of others than the parties and that interest may not be set at naught by the acts or conduct of any party alone. It is not the function of the courts to engraft supposed improvements on such public policy but to enforce it as expressed in our statutes. “ Marriage being a public institution of universal concern, and each individual marriage or its dissolution affecting the rights not only of .the husband and wife but of all other persons, the court sitting in a divorce cause should regard the public as a party thereto, and so far protect its interests as not to suffer the decree for dissolution or suspension to pass contrary to the real facts and justice of the case.” (2 Bishop on Marriage, Divorce and Separation, § 480.)
Bona fide residence and domicile require both intention and act. Taking a train to Nevada with no intention of making *319 that place one’s residence or domicile and actually not doing so, no more gives jurisdictional basis of the subject matter of an action for divorce than mailing a letter to Mexico. Both the train ride and the transmission of the letter are merely parts of a sham and a fraud. If dropping a letter in the mailbox does not change the actual facts of intention and residence, how can a reasonable man think that a train ride will make the difference. Absent domicile, appearance through one’s self or an attorney no more confers such jurisdiction than appearance by mail.
This case should not be disposed of summarily on motion but should await plenary trial.
Accordingly, I dissent and vote to reverse the order and judgment dismissing the complaint and to deny the motion.
Glennon and Cohn, JJ., concur with Peck, J.; Martin, P. J., dissents and votes to reverse and deny j Dore, J., dissents with opinion.
Judgment and order affirmed, with costs.