William R. Brennan, Jr., J.
On October 31,1946, the defend-1 ant wife married Alfred Sautter. They separated in 1957 and on; October 7,1957 entered into a separation agreement. They were! residents of the State of New York at the time. On January 11, | 1958, she filed a bill of complaint in the Alabama Circuit Court, County of Marion, in an action against Sautter seeking a divorce on grounds of cruelty. That bill alleged her to be “ a resident citizen of the State of Alabama * * * for the time required by law.” The defendant,Sautter in that action was alleged to be | a nonresident. His answer filed on January 13, 1958 admitted the allegations as to age, residence and marriage and denied the ¡ remaining allegations of the bill of complaint. The wife’s testimony was taken in Alabama by deposition on January 14, 1958. In her deposition she stated: ‘ ‘ I am over the age of twenty-one years and a resident citizen of the State of Alabama, and have been such for the time required by law.” On the following day (January 15,1958) a decree of divorce was made which included findings that the court had jurisdiction of the parties and of the cause of action and determinations that the wife was entitled to a decree of divorce which was to become final sixty days thereafter.
Immediately after obtaining her decree of divorce in Alabama, the wife returned to her residence in New York, which she had not given up, where the issue of her marriage to Sautter were during all this time domiciled and resided, and where she has resided and been domiciled ever since.
On May 13, 1958, she married the plaintiff. The court finds that he knew all of the circumstances under which she obtained her Alabama decree of divorce and that he drove her to the j airport when she left for Alabama, met her there on her return after her stay of a few days there, and knew for what purpose she had appeared in that State. In this context it is unnecessary to decide the contested issue whether he paid for the divorce.
A child was born to the parties on June 1, 1959. At various ! times during the marriage the plaintiff adverted to the possible *829 invalidity of the Alabama decree, bnt not until November or December of 1964, long after these admonitions, did he leave her, and not until the end of January, 1965, did he commence this action for an annulment of his marriage and a declaration that it is void on the ground that the Alabama decree was invalid and, Sautter being then (and still) alive, that she was not competent to marry the plaintiff on May 13, 1958, or at any time since. Sautter is not a party to this action. The question posed is whether the plaintiff, who is a stranger to the Alabama decree of divorce, may attack its validity in the courts of this State.
Basic to the resolution of this litigation is the scope of the full faith and credit to which the Alabama decree divorcing the defendant from her first spouse is entitled. We are warned by the Supreme Court that “ The faith and credit given is not to be niggardly but generous, full ” (Johnson v. Muelberger, 340 U. S. 581, 584). In that case the court went on to say (p. 587): “ It is clear from the foregoing that, under our decisions, a state by virtue of the clause must give full faith and credit to an out-of-state divorce by barring either party to that divorce who has been personally served or who has entered a personal appearance from collaterally attacking the decree. Such an attack is barred where the party attacking would not be permitted to make a collateral attack in the courts of the granting state.” (See, also, Cook v. Cook, 342 U. S. 126.)
It is thus settled that neither of the parties to the Alabama divorce proceedings could now assail in New York the judgment granted in Alabama. This has long been recognized in New York (Boxer v. Boxer, 7 A D 2d 1001, affd. 7 N Y 2d 781; Shea v. Shea, 270 App. Div. 527, 529-530; Kienle v. Kienle, 201 Misc. 948, 950-951; Kleinberg v. Kleinberg, 7 Misc 2d 233). The New York rule is aptly stated in Matter of Rhinelander (290 N. Y. 31, 36-37): “ It is no part of the public policy of this State to refuse recognition to divorce decrees of foreign states when rendered on the appearance of both parties, even when the parties go from this State to the foreign state for the purpose of obtaining the decree and do obtain it on grounds not recognized here (Glaser v. Glaser, supra, [276 N. Y. 296], p. 302).”
The question presented for determination here is not whether a party to an Alabama divorce could attack the decree collaterally in this jurisdiction, but whether a second husband, not a party to the Alabama divorce decree, may, and if so, under what circumstances, collaterally attack the decree in New York. The answer to this question must be found in the substantive law of the State of Alabama. If Alabama would allow the plaintiff here to attack the divorce decree in an action brought in Ala *830 bama, then New York may also permit such an attack. If Alabama would refuse plaintiff relief, then New York may not grant him relief.
The proposition is limned in Halvey v. Halvey (330 U. S. 610, 614) where we find that: “ So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do - * * * [A] judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered.” (See, also, Cook v. Cook, 342 U. S. 126, supra.) And it follows that “ When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit Clause forbids ” (Johnson v. Muelberger, 340 U. S. 581, 589. See, also, Klarish v. Klarish, 19 A D 2d 170, affd. 14 N Y 2d 662).
Recognizing that the burden of undermining the Alabama decree rests heavily upon him, Phillips v. Phillips, 15 Misc 2d 884; Kienle v. Kienle, 201 Misc. 948) the plaintiff relies upon the leading Alabama case of Hartigan v. Hartigan (272 Ala. 67). Strictly speaking, the Hartigan case merely decided that the Circuit Court of Jefferson County had the power to vacate on its own motion a divorce decree granted by that court in a proceeding where both parties to the earlier decree were physically before the court and where neither party was attacking the validity of the decree, but where the court discovered that a fraud had been perpetrated upon it by false testimony concerning the facts of jurisdiction. Hartigan did not hold that a party to such a decree could attack the decree in a subsequent proceeding in Alabama, and it did not hold that a stranger to the divorce decree could attack the decree on jurisdictional grounds in the State of Alabama. Thus, the Hartigan case does not answer the question.
In Aiello v. Aiello (272 Ala. 505), a second husband, a stranger to the divorce decree previously granted to his wife in Alabama, sought a declaratory judgment nullifying the decree and voiding his marriage. The opinion of the high court in the Aiello case is important not only for what it holds and decides, but also for what it does not decide. The court dismissed the complaint on the ground that it was time barred, but in doing so authorized the plaintiff to amend his complaint to set forth a cause of action for an annulment based upon fraud of the defendant there in misrepresenting to the plaintiff -that she was free to marry him. The court laid great emphasis upon the requirement in any *831 amended complaint of showing diligence on the part of the plaintiff in discovering the alleged fraud, facts from which the court might excuse the lengthy delay in commencing the action, and facts from which the court might conclude that plaintiff was in no way privy to the alleged fraud perpetrated upon the court by the wife in the prior divorce proceeding. Thus, the court very narrowly defined the limits within which such a collateral attack might be maintained by a stranger to a divorce decree. The court specifically refrained from deciding whether such a plaintiff even possessed standing to bring an action in the nature of a declaratory judgment declaring the divorce decree void, but its dicta is a clear indication that the court would not allow such an attack. It stated (p. 510): “ The foregoing conclusion as to delay is reached on the assumption that complainant, as ostensible second husband of a party to the divorce suit, possesses standing to bring an original bill in the nature of a bill of review for the purpose of vacating such divorce decree. That is merely an assumption. He was not a party to the divorce suit. We do not think he possessed, at the time the divorce decree was rendered, any right which was adversely affected by that decree. It does not appear that he stands in privity with either party to the divorce suit. He cannot derive any right from the respondent, the woman he purportedly married in 1950, because, if the 1950 marriage is void as he says it is, then no right could pass to him by a void marriage; and, if the marriage be not void, then he is still the husband of respondent and cannot have their marriage annulled, as he seeks to have done by this suit. We do not decide that he can maintain the instant hill as an original hill in the nature of a hill of review for the sole purpose of vacating the 1948 decree. We do decide that even if he could maintain such a bill for that sole purpose, the instant bill shows on its face that it was filed too late.” (Emphasis supplied.)
Thus, as this court reads the Aiello decision, Alabama will not allow a collateral attack by a second husband upon a divorce decree previously obtained by his wife upon the sole ground that the Alabama court at the time of granting the decree was without jurisdiction. In order for such a collateral attack to lie in Alabama, the plaintiff must prove not only that the court was without jurisdiction to have granted the decree, but also that the second husband was unaware of this jurisdictional defect and that a fraud was practiced upon him by the wife in representing that she was in fact free to marry. If such be the thrust of the Alabama decisions, and it would clearly appear to be in view of the reliance placed by the court in Aiello upon Mussey v. Mussey *832 (251 Ala. 439) and Fairclough v. St. Amand (217 Ala. 19) then the plaintiff here could under no circumstances succeed in any collateral attack in the courts of Alabama. The plaintiff here was fully aware of the circumstances under which the defendant obtained her decree in Alabama. He was fully aware that she was at that time a resident of New York and that she had sojourned to Alabama solely for the purpose of obtaining the divorce with no intention of remaining in that jurisdiction. Since no fraud was perpetrated upon him, he would have no standing in the courts of Alabama. Accordingly, he has no standing in New York.
At first blush, the cases of Weisner v. Weisner (18 A D 2d 997 [on pleadings] and 23 A D 2d 632 [on judgment]) and Magowan v. Magowan (45 Misc 2d 972) might appear to be contrary to the court’s determination in this ease. In fact, much of the reasoning in the lower court opinions of those cases differs with this court’s reading of the Eartigan and Aiello cases. Ordinarily, notwithstanding our own analysis of the Alabama cases, this court would nevertheless feel constrained to follow the Appellate Division First Department’s affirmance of the Weisner case. It must be noted, however, that both the lower court opinions in Weisner and Magowan, as well as the Appellate Division’s affirmance of the Weisner case, were rendered prior to the decision of the Court of Appeals in the ease of Bosenstiel v. Bosenstiel (16 N Y 2d 64). In that case the court sustained the validity of Mexican decrees where both parties appeared but where the contact of neither party with the Republic of Mexico was more than minimal and pro forma. While obviously not approving the grounds for the decrees or of the bases for the exercise of jurisdiction by the foreign court, our Court of Appeals, nevertheless, sustained the Mexican judgments on the basis of comity. In this connection, the court stated (p. 73):
“ The duration of domicile in sister States providing by statute for a minimal time to acquire domicile as necessary to matrimonial action jurisdiction is in actual practice complied with by a mere formal gesture having no more relation to the actual situs of the marriage or to true domicile than the formality of signing the Juarez city register. The difference in time is not truly significant of a difference in intent or purpose or in effect.
“ The State or country of true domicile has the closest real public interest in a marriage but, where a New York spouse goes elsewhere to establish a synthetic domicile to meet technical acceptance of a matrimonial suit, our public interest is not affected differently by a formality of one day than by a formality of six weeks.” (Emphasis supplied.)
*833 It is, of course, true that the Rosenstiel case was based upon principles of comity rather than the constitutional principle of full faith and credit. The full faith and credit clause is a command to the States which requires them to recognize judgments of sister States within the limits imposed by the constitutional doctrine. This is not to say, however, that a State cannot afford to the decrees of a sister State even greater recognition than that which is constitutionally mandated. It would seem that our Court of Appeals, in light of Rosenstiel, would give no less recognition to decrees rendered in the sister State of Alabama than to those rendered in the Republic of Mexico. Thus, absent a clear showing by the plaintiff that he would be entitled to maintain an action in the nature of a declaratory judgment in the courts of Alabama for the purpose of voiding a decree to which he was not a party, he is not entitled to maintain a similar action in New York. If New York is to afford to State-side decrees which are immune to attack in the rendering States less recognition than is afforded to the foreign decrees described in Rosenstiel, it should be on the basis of a definite ruling by our high court and none, certainly since Rosenstiel, has been called to this court’s attention.
In view of the foregoing, the complaint in the annulment action is dismissed. The parties stipulated at the trial that the trial of the defendant’s separation action against the plaintiff would await the outcome of the trial of the annulment action. Under these circumstances, the judgment herein may contain a direction severing the separation action and setting it down for trial for a day certain. Pursuant to the powers granted to the court by section 236 of the Domestic Relations Law, the defendant is awarded the sum of $40 per week for her support and maintenance and that of the child of the parties effective as of the date of trial herein, January 11, 1966, with credit for any payments which plaintiff may have made to the defendant during the period commencing with said effective date. This disposition is made without prejudice to such other or different provision as the Justice presiding at the trial of the separation action may make with reference to permanent alimony.
This constitutes the decision of the court required by CPLR 4213. All motions upon which judgment was reserved at the trial are resolved accordingly. Settle judgment, accordingly, without costs, and on notice.